# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA
and the States of CALIFORNIA,
CONNECTICUT, FLORIDA,
ILLINOIS, MASSACHUSETTS,
MICHIGAN, NEW YORK, OHIO,
RHODE ISLAND, and TEXAS, and
the Government of PUERTO RICO,
*ex rel.* MSP WB, LLC, and *ex. rel.*
MICHAEL ANGELO,

      Plaintiffs-Relators,

v.

STATE FARM MUT. AUTO. INS.
CO., *et al.*

      Defendants.

Case No.: 2:19-cv-12165-LJM-APP
Hon. Laurie J. Michelson
Mag. Judge Anthony P. Patti

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants respectfully move this Court to dismiss Relators' Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for its failure to state a plausible claim upon which relief may be granted with particularity as required by Federal Rules of Civil Procedure 8(a) and 9(b), and because Relators' claims are barred by the False Claims Act's ("FCA") public disclosure bar (31 U.S.C. § 3730(e)(4)(A)). In support thereof, Defendants state:

1.     The Complaint filed on June 8, 2021 alleges that Defendants violated 31 U.S.C. § 3729(a)(1)(G), the reverse false claims provision of the FCA, conspired

to violate 31 U.S.C. § 3729(a)(1)(G), and committed violations of ten states' and Puerto Rico's false claim and fraud statutes, by allegedly failing to report and reimburse amounts paid by private health insurers that participate in the Medicare and Medicaid programs.

2.    The Complaint is premised on conclusory allegations about "Defendants" in general and does not plausibly allege, let alone plead with particularity, the elements of an FCA (31 U.S.C. §§ 3729(a)(1)(C), (G)) violation by each Defendant.

3.    Moreover, the FCA's public disclosure bar (31 U.S.C. § 3730(e)(4)(A)) precludes this lawsuit because it is based on the same "essential elements" of conduct previously set forth in prior FCA lawsuits and in the news media.

4.    Finally, the Complaint's conclusory allegations about "Defendants" do not plausibly allege, let alone plead with particularity, violations of the false claims statutes of 10 states and Puerto Rico by each Defendant, and the Court can and should decline to exercise supplemental jurisdiction over the state claims.

5.    Pursuant to Local Rule 7.1(a)(1), Relators' consent to the relief requested was sought on December 13, 2021 and was not given, necessitating presentation of this motion.

WHEREFORE, for the reasons discussed more fully in Defendants' Memorandum of Law in Support of the Motion to Dismiss the Complaint,

2

Defendants' Motion Requesting Judicial Notice, and supplemental memoranda filed by certain Defendants, this Court should grant this motion and dismiss with prejudice Counts I, II, and III of the Complaint.  Defendants further request that the Court grant any additional relief that the Court finds appropriate.

[*Defendants' signature blocks located at end of memorandum of law*]

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

**STATEMENT OF THE ISSUES PRESENTED**

Should the Amended Complaint be dismissed pursuant to Federal Rule of
Civil Procedure 12(b)(6) because:

1.  The Complaint is premised on conclusory allegations about "Defendants"
in general and does not plausibly allege, let alone plead with particularity, the
elements of a False Claims Act ("FCA") (31 U.S.C. §§ 3729(a)(1)(C), (G)) violation
by each Defendant?

**Answer: Yes.**

2.  The FCA's public disclosure bar (31 U.S.C. § 3730(e)(4)(A)) precludes
this lawsuit because it is based on the same "essential elements" of conduct
previously set forth in prior FCA lawsuits and in the news media?

**Answer: Yes.**

3.  The Complaint's conclusory allegations about "Defendants" do not
plausibly allege, let alone plead with particularity, violations of the false claims
statutes of 10 states and Puerto Rico by each Defendant, and the Court can and
should decline to exercise supplemental jurisdiction over the state claims?

**Answer: Yes.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1. Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6)

2. 31 U.S.C. § 3729(a)(1)(C)

3. 31 U.S.C. § 3729(a)(1)(G)

4. 31 U.S.C. § 3730(e)(4)(E)

5. 42 U.S.C. § 1395y

6. *U.S. v. Wal-Mart Stores E., LP*, 585 F. App'x 876 (6th Cir. 2021)

7. *U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516 (6th Cir. 2020)

8. *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905 (6th Cir. 2017)

9. *U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92 (2d Cir. 2017)

10. *U.S. ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23 (2d Cir. 2017)

11. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

12. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

13. *Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003)

14. *U.S. ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*, 188 F.3d 510 (6th Cir. 1999)

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ...................................................................................7

    I.     The False Claims Act ...............................................................7

    II.    The Medicare Secondary Payer Act......................................7

    III.   Medicaid ...............................................................................10

    IV.   Relators Angelo and MSP WB Commence This Action .....11

LEGAL STANDARD...........................................................................15

ARGUMENT ......................................................................................17

    I.     The Complaint Fails to Plead a Reverse False Claims Act
           Violation Against Any Defendant..........................................17

         a.    Count I Should Be Dismissed as to the Non-Exemplar
              Defendants Because the Complaint is Devoid of Specific
              Factual Allegations Against Them ............................18

         b.    Count I Should be Dismissed as to All Defendants for
              Failure to Plead the Elements of a Reverse False Claim ..........20

             i.     Relators Fail to Plead Obligations "To The
                   Government"................................................21

             ii.    Relators Also Fail to Plead Any Defendant Owed a
                   Financial "Obligation" at All........................24

             iii.   Alleged Section 111 Reporting Deficiencies Are
                   Not False Statements, and the Complaint Does Not
                   Allege Concealment or Improper Avoidance of an
                   Obligation ...................................................26

             iv.   Relators Fail to Plead Scienter........................28

    II.    The Complaint Fails to State a Claim That Defendants All
           Conspired to Violate the FCA (Count II)...........................30

    III.   The FCA's Public Disclosure Bar Compels Dismissal of the
           Complaint ..........................................................................32

         a.    Prior Government and *Qui Tam* Lawsuits Have Asserted
              That Insurers Intentionally Fail to Reimburse Under the
              MSP Act .....................................................35

b.     The News Media Have Widely Reported (Discredited) Allegations That Insurers Purportedly Fail to Comply With the MSP Act and Reimburse Conditional Payments ....... 39

c.     Relators Cannot Demonstrate That They Are "Original Sources" ................................................................................. 42

IV.    Count III Does Not Adequately Plead Claims Under State or Puerto Rico Law ............................................................................... 48

CONCLUSION ........................................................................................................ 50

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................ 17, 28, 29

*Atlas Techs., LLC v. Levine*,
  268 F. Supp. 3d 950 (E.D. Mich. 2017) ............................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 17, 49

*Benoay v. Decker*,
  517 F.Supp. 490 (E.D. Mich. 1981) ....................................................18

*Care Choices HMO v. Engstrom*,
  330 F.3d 786 (6th Cir. 2003) ................................................................8

*Chesbrough v. VPA, P.C.*,
  655 F.3d 461 (6th Cir. 2011) ..............................................................16

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ..............................................................20

*DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*,
  978 F.3d 326 (6th Cir. 2020) ..............................................................24

*Dingle v. Bioport Cor.*,
  388 F.3d 209 (6th Cir. 2004) ..............................................................34

*Fed. Recovery Servs., Inc. v. United States*,
  72 F.3d 447 (5th Cir. 1995) ................................................................44

*IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC*,
  263 So. 3d 122 (Fla. Dist. Ct. App. 2018) ........................................40

*In re Natural Gas Royalties Qui Tam Litig.*,
  562 F.3d 1032 (10th Cir. 2009) ..........................................................41

*MAO-MSO Recovery II, LLC v. Mercury Gen.*,
  2021 WL 3615905 (C.D. Ca. 2021) ......................................................2

MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,
   994 F.3d 869 (7th Cir. 2021) ..............................................................2, 14

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   No. 1:17-cv-01541 (S.D. Ill. 2017)...........................................................27

MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.,
   2021 WL 1164091 (S.D.N.Y. 2021)....................................................2, 25

*MSP Recovery Claims, Series LLC v. N.Y. Cent. Mut. Fire Ins. Co.*,
   2019 WL 4222654 (N.D.N.Y. 2019).......................................................45

*MSP Recovery v. USAA Gen. Indem. Co.,*
   *2018 WL 5112998 (S.D. Fla. 2018)*....................................................2, 14

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
   940 F. Supp. 1101 (W.D. Mich. 1996) ...................................................16

*Sanderson v. HCA-The Healthcare Co.*,
   447 F.3d 873 (6th Cir. 2006) ....................................................... 16, 27, 48

*U. S. ex rel. Holbrook v. Brink's Co.*,
   336 F. Supp. 3d 860 (S.D. Ohio 2018) ....................................................31

*U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*,
   813 F.3d 1259 (9th Cir. 2016) .................................................................21

*U.S. ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*,
   816 F.3d 428 (6th Cir. 2016) ...................................................................47

*U.S. ex rel. Am. Sys. Consulting, Inc. v. Man Tech Advanced Sys. Int'l Inc.*,
   2012 WL 12929898 (S.D. Ohio 2012) .....................................................33

*U.S. ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
   878 F.3d 1224 (10th Cir. 2017) ...............................................................24

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
   342 F.3d 634 (6th Cir. 2003) ("*Bledsoe I*")........................................... 15, 16, 18

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
   501 F.3d 493 (6th Cir. 2007) ("*Bledsoe II*") ......................................... 15, 18, 48

*U.S. ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*,
   1999 WL 618018 (6th Cir. 1999) ..........................................................................18

*U.S. ex rel. Dennis v. Health Mgmt. Assocs.*,
   2013 WL 146048 (M.D. Tenn. 2013)............................................................... 30, 32

*U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*,
   2021 WL 4502275 (N.D. Tex. 2021)..................................................................49

*U.S. ex rel. Guzall v. City of Romulus*,
   2017 WL 3394751 (E.D. Mich. 2017)................................................................43

*U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
   842 F.3d 430 (6th Cir. 2016) .......................................................................... 28, 43

*U.S. ex rel. Hayes v. Allstate Ins. Co.*,
   2016 WL 463732 (W.D.N.Y. 2014) ......................................................... 20, 35, 37

*U.S. ex rel. Holloway v. Heartland Hospice, Inc.*,
   960 F.3d 836 (6th Cir. 2020) ..................................................................... passim

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
   874 F.3d 905 (6th Cir. 2017) ..................................................................... passim

*U.S. ex rel. Jamison v. McKesson Corp.*,
   649 F.3d 322 (5th Cir. 2011) ......................................................................... 37, 42

*U.S. ex rel. Koerner v. Crescent City E.M.S.*,
   946 F. Supp. 447 (E.D. La. 1996).....................................................................45

*U.S. ex rel. Kolchinsky v. Moody's Corp.*,
   162 F. Supp. 3d 186 (S.D.N.Y. 2016) ...............................................................21

*U.S. ex rel. Lada v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016) ..............................................................................32

*U.S. ex rel. Lee v. Corinthian Colls*,
   655 F.3d 984 (9th Cir. 2011) ...........................................................................19

*U.S. ex rel. Marlar v. BWXT Y-12*,
   *L.L.C.*, 525 F.3d 439 (6th Cir. 2008) ........................................................... 17, 30

*U.S. ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*
  2008 WL 2857372 (D. Idaho 2008)........................................................26

*U.S. ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*,
  2009 WL 2486339 (D. Idaho 2009)........................................................28

*U.S. ex rel. Maur v. Hage-Korban*,
  981 F.3d 516 (6th Cir. 2020) ............................................ 32, 34, 46, 47

*U.S. ex rel. O'Laughlin v. Radiation Therapy Servs.*,
  497 F. Supp. 3d 224 (E.D. Ky. 2020) ..................................................31

*U.S. ex rel. Owsley v. Fazzi Assocs., et al.*,
  16 F.4th 192 (6th Cir. 2021) ................................................... 3, 15, 18

*U.S. ex rel. Petras v. Simparel, Inc.*,
  857 F.3d 497 (3d Cir. 2017) ........................................................ 21, 23

*U.S. ex rel. Precision Co. v. Koch Indus., Inc.*,
  971 F.2d 548 (10th Cir. 1992) ..............................................................44

*U.S. ex rel. Rahimi v. Rite Aid Corp.*,
  3 F.4th 813 (6th Cir. 2021) ......................................................... 47, 50

*U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*,
  674 F. App'x 92 (2d Cir. 2017) ............................................ 20, 36, 38

*U.S. ex rel. Takemoto v. The Hartford Fin. Servs. Grp.*,
  157 F. Supp. 3d 273 (W.D.N.Y. 2016)..................................................38

*U.S. ex rel. Winkler v. BAE Sys., Inc.*,
  957 F. Supp. 2d 856 (E.D. Mich. 2013) ....................................... 18, 32

*U.S. v. Emergency Med. Assocs.*,
  436 F.3d 726 (7th Cir. 2006) ..............................................................41

*U.S. v. Garman*,
  719 F. App'x 459 (6th Cir. 2017) ........................................................50

*U.S. v. Murphy*,
  937 F.2d 1032 (6th Cir. 1991) ............................................................31

*U.S. v. Stricker,*
    2010 WL 6599489 (N.D. Ala. Sept. 30, 2010).......................................................35

*U.S. v. Stricker,*
    No. CV-09-PT-2423-E (N.D. Ala. 2009) .............................................................35

*U.S. v. Univ. of San Francisco*,
    2006 WL 335316 (N.D. Cal. 2006) .....................................................................43

*U.S. v. Wal-Mart Stores E., LP*,
    858 F. App'x 876 (6th Cir. 2021) ................................................................ 15, 50

*U.S. v. Wal-Mart Stores E., LP*,
    No. 20-2128, 2021 WL 2287488 (6th Cir. 2021)................................................31

*United States v. Caremark, Inc.*,
    634 F.3d 808 (5th Cir. 2011) ...............................................................................22

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................30

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ...........................................................................19

## Rules

Fed. R. Civ. P. 12 ..........................................................................................................3

Fed. R. Civ. P. 8(a).............................................................................................. 17, 49

Fed. R. Civ. P. 9(b) ............................................................................................ passim

## Statutes & Regulations

31 U.S.C. § 3279(b)(3)................................................................................................24

31 U.S.C. § 3729(a)(1)(A)..........................................................................................22

31 U.S.C. § 3729(a)(1)(G) .................................................................................. passim

31 U.S.C. § 3729(b)(1)(A)..........................................................................................28

31 U.S.C. § 3729(b)(3)................................................................................................23

31 U.S.C. § 3730(b)(1)................................................................7

31 U.S.C. § 3730(e)(4)(A) .........................................................33

31 U.S.C. § 3730(e)(4)(B) .........................................................33

31 U.S.C. §§ 3729–3733 .............................................................7

32 L.P.R.A. § 2934a(2)(b) .........................................................50

42 C.F.R. § 411.24(g) ..................................................................9

42 C.F.R. § 411.24(h) ..................................................................9

42 C.F.R. Part 430 .....................................................................10

42 C.F.R. Part 438 .....................................................................11

42 U.S.C. § 1395w-23(a)(1)(B) .................................................23

42 U.S.C. § 1395y(b)(2)(A) .........................................................8

42 U.S.C. § 1395y(b)(2)(B)(i) ..................................................8, 24

42 U.S.C. § 1395y(b)(2)(B)(i)–(ii) ..............................................8

42 U.S.C. § 1395y(b)(2)(B)(ii) .....................................................9

42 U.S.C. § 1395y(b)(2)(B)(iii) ....................................................9

42 U.S.C. § 1395y(b)(7)-(8) .........................................................9

42 U.S.C. § 1395y(b)(8) .............................................................10

42 U.S.C. § 1395y(b)(8)(A)–(C)................................................10

42 U.S.C. § 1395y(b)(8)(C) ........................................................25

42 U.S.C. § 1396a(a)(25)(A),(H)–(I) .........................................11

42 U.S.C. § 1396u–2 ..................................................................11

42 U.S.C. § 3729(a)(1)(C) ............................................................7

42 U.S.C. § 3729(a)(1)(G) ..........................................................22

42 U.S.C. § 3729(b)(2)(A)(ii) ...................................................................22

42 U.S.C. § 3729(b)(3) ...........................................................................22

42 U.S.C. §§ 1395c–1395i-6 .....................................................................7

42 U.S.C. §§ 1395j–1395w-6 ....................................................................7

42 U.S.C. §§ 1395w-21–1395w-28 ...........................................................8

42 U.S.C. §1395w-23(a)(1)(A) ..................................................................8

42 U.S.C. 1395w-101–1395w-154 ............................................................7

42 U.S.C. 1395y(b)(2)(B)(ii) ...................................................................24

740 Ill. Comp. Stat. Ann. 175/4(e)(4)(A) ...............................................50

Cal. Gov't Code § 12652(3)(A) ...............................................................50

Cal. Gov't Code § 12652(c)(2) .................................................................50

Conn. Gen. Stat. Ann. § 4-4278(f) ..........................................................50

Fla. Stat. Ann. § 68.083(3) ......................................................................50

N.Y. Fin. L. § 190 ...................................................................................50

O.R.C. § 2913.40 ....................................................................................49

O.R.C. § 5164.35 ....................................................................................49

Puerto Rico False Claims Act No. 154-2018 § 4.04 ...............................50

R.I. Gen. L. § 9-1.14-4 ............................................................................50

Section 3729(a)(1)(G) .................................................... 4, 16, 21, 22

Tex. Hum. Res. Code § 36.113(a)–(b) .....................................................50

## PRELIMINARY STATEMENT

Plaintiffs-Relators assert that more than three hundred auto and liability insurers participated in a scheme to violate the False Claims Act ("FCA") by allegedly failing to reimburse amounts paid by private health insurers that participate in the Medicare and Medicaid programs. The operative Complaint was filed on June 8, 2021. The United States declined to intervene less than nine weeks later on August 9, 2021. The Complaint should be dismissed because it does not plead an FCA violation by any Defendant and the public disclosure bar under the FCA precludes Relators' recycled claims regardless.

Relators are professional participants in the litigation system. Michael Angelo allegedly owns and operates lawyer referral services and healthcare providers that profit from automobile accidents. He filed the original complaint against a single insurance company in response to it suing him for soliciting accident victims and falsifying related insurance claims. MSP WB, LLC was formed earlier this year as an affiliate of the "MSP Recovery" group of companies. It co-signed the amended Complaint, which adds 316 new defendants and conjures up the existence of an insurance industry-wide conspiracy to avoid reimbursement of Medicare. The MSP Recovery companies are shell entities controlled by Relators' counsel in this case. Their business model consists of using hedge fund money to file serial litigation against insurance companies under the Medicare Secondary Payer Act ("MSP Act").

The Seventh Circuit has recognized that MSP Recovery's lawsuits "have all the earmarks of abusive litigation."[1]  Multiple federal district courts have criticized MSP Recovery for "play[ing] fast and loose with [the] facts,"[2] and for filing complaints that are "long on invective and indignation but short on facts."[3]  Scores of MSP Recovery's complaints premised on allegations just like the ones here—baseless accusations that insurance companies improperly refused to reimburse Medicare payments made by private health insurers—have been dismissed.  No case has been successfully prosecuted to final judgment in federal court.

The Complaint here is a re-packaged version of claims MSP Recovery has made against insurers under the MSP Act in almost 150 other cases over the past seven years.  Relators generally allege that the insurer "Defendants" collectively avoided a statutory obligation to reimburse private health insurers (known as Medicare Advantage Organizations or MAOs) for amounts the MAOs paid to cover the medical expenses of Medicare beneficiaries.  Relators allege that, with the help of a supposed co-conspirator, Defendant Insurance Services Office ("ISO"), which

---

[1]   *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 871 (7th Cir. 2021).

[2]   *MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2021 WL 3615905, at *6 (C.D. Ca. 2021) (citing *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (S.D. Fla. 2018)).

[3]   *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *1 (S.D.N.Y. 2021).

provides data reporting and other services to insurers, Defendant insurers[4] schemed to avoid reimbursement obligations by failing to report their liability to Medicare. This time, rather than attempting to assert claims under the MSP Act, Relators assert that the insurer Defendants' alleged failure to reimburse MAOs' payments was fraud on the Government giving rise to FCA liability and treble damages. With the exception of five named Defendants that are the subject of misleading "exemplars" appended to the Complaint, the Complaint consists almost entirely of conclusory statements that are not specific to any individual Defendant.

The Complaint advances an FCA reverse false claim theory, which requires a showing that the defendant knowingly made a "false record or statement material to an obligation to pay or transmit money or property to the Government," or "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decreas[ed] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Rule 9(b)'s heightened pleading requirements apply.[5] To withstand Rule 12 scrutiny, Relators must plead with the requisite particularity both (a) the fraudulent scheme *and* (b) at least one representative false claim violation

---

[4]    ISO is not an insurer.

[5]    *U.S. ex rel. Owsley v. Fazzi Assocs., et al.*, 16 F.4th 192 (6th Cir. 2021) (applying Rule 9(b) to FCA claim alleging Medicare fraud).

under Section 3729(a)(1)(G) by *each Defendant*.[6]  The Complaint does not come

close to clearing this bar.

 *First*, as a matter of settled Sixth Circuit law, the Complaint must be

dismissed with respect to each of the Defendants named in the Complaint but never

identified in connection with any "exemplar" described therein.  Group pleading and

conclusory, generic allegations about conduct by "Defendants" at large do not pass

muster for purposes of stating a claim under the FCA.  *See* Argument, Section I(a),

*infra*.

 *Second,* for all Defendants, including the five referenced in "exemplars," the

Complaint fails to plead the elements of an FCA violation with the requisite

particularity.  None of the "exemplars" pleads facts showing an insurer Defendant

had an "obligation to pay or transmit money" to "the Government."  All of the

"exemplars" purport to describe an obligation owed to an MAO, not "the

Government."  Reverse false claims based on the supposed impairment of

obligations owed by one private party to another are not within the scope of the FCA.

The Complaint also fails to state with particularity any Defendant's false statement

or conduct that concealed or improperly avoided an obligation to reimburse medical

expenses.  Nor does the Complaint plausibly allege a Defendant's scienter in

---

[6]   *See*, *e.g.*, *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir 2017).

connection with any such conduct.   Contrary to Relators' contention that insurer Defendants were concealing potential reimbursement obligations by failing to report accident-related information to Medicare, the Complaint concedes that each of the five exemplar Defendants reported accident-related information regarding the Medicare beneficiary to Defendant ISO, which was allegedly engaged to help fulfill reporting requirements to the Government.   Nothing in the Complaint supports an inference that ISO, in turn, failed to report information to the Government, let alone did so deliberately.   *See* Argument, Section I(b), *infra*.

*Third*, the Complaint's far-fetched contention that over three hundred insurers conspired with each other and ISO to violate the FCA fails as a matter of law.   The Complaint nowhere pleads any facts to support the existence of any agreement between and among the insurers and ISO—let alone particularized facts of an agreement to defraud the Government in violation of the FCA.   Indeed, the facts alleged in the Complaint (namely, that insurers contracted with ISO to *satisfy* Medicare reporting requirements to the Government) support the opposite inference. *See* Argument, Section II, *infra*.

*Fourth*, the FCA claims must be dismissed pursuant to the FCA's public disclosure bar.   Relators' allegations here are substantially the same allegations made in prior failed lawsuits brought by or on behalf of the United States and publicly disclosed in the news media, including by Relators' counsel.   The general contention

that the insurance industry is not fully reimbursing "conditional payments" of Medicare beneficiaries' accident-related expenses is a carbon copy of the same unfounded allegations made in the public domain long before the Complaint was filed. Articulating a handful of new supposed "exemplars" of the same alleged conduct is not enough to avoid the public disclosure bar. Relators did not voluntarily disclose any of this information to the Government before it was public and do not have knowledge that is independent of and materially adds to the publicly disclosed allegations. Where, as here, a relator's FCA claims "feed off" of alleged conduct previously disclosed, the claims are barred. The FCA's public disclosure bar was designed to guard against parasitic lawsuits like this one. *See* Argument, Section III, *infra*.

*Finally*, Relators' attempt to assert—within a single count—claims under the false claims and Medicaid fraud statutes of Puerto Rico and ten states fails as a matter of law. This count is devoid of any factual allegations, let alone ones that are sufficiently particularized, to bring Defendants' conduct within the purview of these statutes. *See* Argument, Section IV, *infra*.

For these reasons, as set forth in further detail below, the Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND

### I.   THE FALSE CLAIMS ACT

The FCA (31 U.S.C. §§ 3729–3733) imposes civil liability on those who defraud the United States Government.  The Complaint advances a reverse false claim theory, which requires a showing that each defendant knowingly made a "false record or statement material to an obligation to pay or transmit money or property to the Government," or "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decreas[ed] an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G).  The FCA also imposes liability on any person that conspires to violate the FCA.  *See id.* § 3729(a)(1)(C).  To promote enforcement of the FCA, private persons, called relators, can bring *qui tam* actions on behalf of the United States provided they meet certain statutory criteria.  *See* 31 U.S.C. § 3730(b)(1).

### II.   THE MEDICARE SECONDARY PAYER ACT

"Traditional" Medicare allows citizens over age 65 or with a disability to obtain medical benefits through the Centers for Medicare & Medicaid Services ("CMS").  Medicare includes Part A (hospital services, skilled nursing facilities, and home health services), 42 U.S.C. §§ 1395c–1395i-6; Part B (physician services, some preventative services, ambulance services, and durable medical equipment), *id.* §§ 1395j–1395w-6; and Part D (prescription drug coverage, administered by private entities), *id.* §§ 1395w-101–1395w-154.  Enacted in 1997, Medicare

Advantage (Part C) allows enrollees to obtain Medicare benefits through MAOs. *Id.* §§ 1395w-21–1395w-28. The federal government pays MAOs a fixed ("capitated") rate in exchange for the MAOs' administration of Medicare benefits for Part C enrollees. *Id.* §1395w-23(a)(1)(A).

The MSP Act makes Medicare the secondary, rather than primary, payer when private sources (such as no-fault or liability insurance or a litigation recovery) are legally responsible to cover the costs of a Medicare beneficiary's medical claims. *See* 42 U.S.C. § 1395y(b)(2)(A); *Care Choices HMO v. Engstrom*, 330 F.3d 786, 789 (6th Cir. 2003).

Only in the very limited cases where a Medicare beneficiary requires treatment but a legally responsible private source of payment has not paid or cannot reasonably be expected to make prompt payment—for instance, when liability is in dispute—does the MSP Act authorize the Secretary of Health and Human Services to pay for the beneficiary's medical services to ensure timely treatment. *See* 42 U.S.C. § 1395y(b)(2)(B)(i). Such statutorily defined and qualified payments by CMS are "conditional" and subject to reimbursement if another party's responsibility is demonstrated or later attaches—for example, by way of a settlement, judgment, or other award to the beneficiary. *Id.* § 1395y(b)(2)(B)(i)–(ii). Once another party's responsibility is demonstrated or attaches, CMS can then seek reimbursement from the Medicare beneficiary, the beneficiary's "primary plan"

8

(defined as, among other things, "an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance"), or any other "entity that receives payment from [the] primary plan," such as a plaintiff's counsel. 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.24(h).

If no party reimburses the conditional payment made by Medicare, "the United States" is authorized to bring an action directly against "any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity[.]" 42 U.S.C. § 1395y(b)(2)(B)(iii); *see also* 42 C.F.R. § 411.24(g). MAOs are not identified in the MSP Act. The Complaint here assumes that MAOs may make conditional payments under the MSP Act and then become eligible to seek reimbursement under the MSP Act rather than common law.[7]

In 2007, to enhance CMS's ability to obtain reimbursement of accident-related medical expenses paid to Medicare beneficiaries, Congress enacted so-called "reporting requirements" (referred to as Section 111 reporting requirements) that became effective in 2011. 42 U.S.C. § 1395y(b)(7)–(8). "Section 111 [insurer] reporting of applicable liability [and] no-fault . . . claim information helps CMS

---

[7]     While Defendants dispute this legal proposition, it is not central to this Motion to Dismiss because, as explained below, no such statutory conditional payments have been pled as a factual matter.

9

determine when other insurance coverage is primary to Medicare."[8]  Pursuant to Section 111, insurers are required to report quarterly to CMS the identity of claimants (including any claimant "whose claim is unresolved") who are seeking coverage for medical expenses and are determined by the insurer to be Medicare beneficiaries.  *Id.* § 1395y(b)(8).  These quarterly reports to CMS must also include certain accident-related information about these claimants, "regardless of whether or not there is a determination or admission of liability."  *Id.* § 1395y(b)(8)(A)–(C).[9]  Liability insurers may report this information themselves, or they may engage a third-party, such as ISO,[10] to do so.

## III.  MEDICAID

Medicaid is a state-run insurance program that provides health coverage to low-income families and individuals and is funded jointly by the federal government and the states.  *See* 42 C.F.R. Part 430.  Each state operates its own Medicaid program within federal guidelines.  *See id.*  States that offer Medicaid must require certain private insurers which provide overlapping coverage to either pay for

---

[8]    *Mandatory Insurer Reporting (NGHP)*, CMS, *available at* https://go.cms.gov/2x3YLpD (last visited Dec. 10, 2021).

[9]    *See Mandatory Insurer Reporting (NGHP)*, CMS, *available at* https://go.cms.gov/2x3YLpD (last visited Dec. 10, 2021).

[10]   ISO is a data management company and is one of several entities that assists certain insurers in reporting so-called Section 111 information it receives from insurers to CMS.

covered medical expenses before Medicaid pays or timely reimburse Medicaid for such expenses. *See* 42 U.S.C. § 1396a(a)(25)(A),(H)–(I). In some instances, private health insurers known as Medicaid Managed Care Organizations contract with states to offer Medicaid benefits in exchange for a capitated payment from the state. *See* 42 U.S.C. § 1396u–2; 42 C.F.R. Part 438.

## IV.   RELATORS ANGELO AND MSP WB COMMENCE THIS ACTION

<u>Mr. Angelo</u>: Relator Michael Angelo allegedly "owns and operates lawyer referral services and healthcare providers." Compl. ¶ 12. Angelo alleges that his unidentified healthcare "facilities" provided medical services for unspecified accident-related injuries. *Id.* Angelo filed the initial *qui tam* complaint (under seal) in this action in July 2019 on behalf of the United States and the State of Michigan against just one Defendant, State Farm Mutual Automobile Insurance Company ("State Farm MAIC"). *See* ECF No. 1. Angelo filed the original complaint only a few months after being sued by State Farm MAIC for falsifying insurance claims. *See* Compl.*, State Farm Mut. Auto. Ins. Co. v. Angelo*, No. 19-cv-10669 (E.D. Mich. Mar. 2019).[11]

---

[11]   That lawsuit was settled before the amended Complaint in this case was filed and the settlement actually bars Angelo's claims in this action. *Id.* at ECF No. 118-2. This is further addressed in the State Farm Defendants' Supplemental Brief.

In the original complaint, Angelo claimed to have learned about a "fraudulent scheme," perpetrated by State Farm MAIC, "to avoid paying medical benefits to motor vehicle accident victims it insured, thus, causing the government to pick up the expenses without being reimbursed." ECF No. 1 ¶¶ 2–3, 16. In March 2021, the United States and Michigan declined to intervene in the action. *See* ECF No. 17.

The Amended Claim and New Relator: In June 2021, before any service of the original complaint, Angelo filed an amended *qui tam* complaint, adding a new relator, MSP WB, naming 316 additional defendants, and purporting to bring the action not only on behalf of Michigan and the United States, but also nine other states and Puerto Rico. Less than two months later, the United States, Michigan, and nine states plus Puerto Rico jointly declined to intervene in the action (ECF Nos. 22, 26), and the Complaint was unsealed. *See* ECF No. 24.

The new relator, MSP WB, was formed in January 2021, 18 months *after* Angelo initiated this lawsuit and only six months before it appeared as a relator in this action. *See* Request for Judicial Notice Ex. 46 (Del. Dep't of State Div. of Corp. Filing). According to the Complaint, MSP WB assists "Government Healthcare Plans" in identifying and obtaining reimbursements of "conditional" payments ostensibly made to beneficiaries. Compl. ¶ 11. MSP WB is part of a family of hedge fund-backed, special-purpose litigation vehicles that were formed by Relators'

12

counsel in this case to sue insurance companies.[12]  These litigation shells collectively have filed hundreds of failed lawsuits across the country (ostensibly asserting the rights of MAOs) alleging that insurers violated the MSP Act by supposedly failing to reimburse the MAOs for accident-related medical services received by Part C beneficiaries.[13]  Every one of those lawsuits (like this one) is based on MSP Recovery, via the "MSP System," purportedly "matching" (1) names of individuals involved in accidents based on the claims data purchased by MSP Recovery with (2) the billing records of MAOs.  *See* First Am. Compl. ¶¶ 68, 174, *MSP Recovery Claims, Series LLC v. The Travelers Indem. Co. et al.*, No. 1:20-cv-24176 (S.D. Fla. 2021).  If there is a "match" (*i.e.*, an insurer received a claim from a Part C beneficiary involved in an accident and an MAO paid for medical services around the time of the accident), MSP Recovery alleges fraud by the insurer without more, just as the newly formed legal entity-relator, MSP WB, does in this case.

---

[12]    *See* Compl. ¶ 193; Lyle Adriano, "'Whistleblower' lawsuit names 315 auto insurers," INSURANCE BUSINESS AMERICA (Aug. 20, 2021), *available at* https://www.insurancebusinessmag.com/us/news/breaking-news/whistleblower-lawsuit-names-315-auto-insurers-302901.aspx; Antoine Gara *et al.*, "How To Conjure A $20 Billion Fortune Using A SPAC," FORBES (July 13, 2021), *available at* https://www.forbes.com/sites/katiejennings/2021/07/13/how-to-conjure-a-20-billion-fortune-using-a-spac/?sh=5524c4482320.

[13]    *See* RJN, Ex. 47 (listing 144 lawsuits by the MSP Recovery family since 2015).

No federal court has entered a judgment in favor of MSP Recovery based on such allegations.  To the contrary, courts describe MSP Recovery as a serial filer of "abusive litigation."  *See, e.g.*, *State Farm*, 994 F.3d at 871 ("This lawsuit mirrors scores like it filed in federal courts throughout the country that have all the earmarks of abusive litigation and indeed have drawn intense criticism from many a federal judge.  The plaintiffs should think hard before risking a third strike within our Circuit.").  And courts have criticized these suits for "playing fast and loose" with the "facts" and offering misleading descriptions of adverse judicial rulings.  *MAO-MSO Recovery II*, 2021 WL 3615905, at *6; *MSP Recovery v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (same); *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 2392827, at *2, 4 (C.D. Ill. 2018) (criticizing plaintiff's counsel for a lack of "candor" and "feign[ing] legitimacy through empty documentation and the appearance of a sophisticated corporate scheme").

As amended, the Complaint asserts reverse false claim violations under 31 U.S.C. § 3729(a)(1)(G).[14]  *See* Compl. ¶¶ 544–56.  The Complaint includes ten

---

[14]    Relators' Appendix A attached to the Complaint lists 316 Defendant insurers in this action.  However, the Complaint also names ISO as a Defendant.  Thus, we refer to 317 Defendants in this action.  But it is not clear that a reverse false claim is asserted against ISO as the allegations in Count I refer to "Defendants" in a way that would exclude ISO.  *See*, *e.g.*, Compl. ¶ 549 (referencing Defendants' "primary payer obligation").

purported "exemplars" (nine within Appendix B and a tenth in paragraphs 527–38 of the Complaint) purporting to illustrate reverse false claims.  Only five of the ten exemplars reference a named Defendant (the "Exemplar Defendants").  No supposed exemplar allegations are pled against the remaining 312 Defendants (the "Non-Exemplar Defendants").[15]   The Complaint also alleges one count of conspiracy against all Defendants pursuant to 31 U.S.C. § 3729(a)(1)(C).   Finally, the Complaint alleges, in a single count, violations of ten states' and Puerto Rico's false claims laws.  *See id.* ¶¶ 566–617.

## LEGAL STANDARD

Rule 9(b)'s heightened pleading requirements apply to FCA claims and each count of the Complaint.  *Fazzi*, 16 F.4th at 197 (applying Rule 9(b) to FCA claim alleging Medicare fraud); *U.S. v. Wal-Mart Stores E., LP*, 858 F. App'x 876, 878 (6th Cir. 2021); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641 (6th Cir. 2003) ("*Bledsoe I*").   Relators must "plead with particularity" "the circumstances constituting fraud" on the Government—an "indispensable" requirement of a complaint that alleges an FCA violation.  *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504–06 (6th Cir. 2007) ("*Bledsoe II*"); *see also Fazzi*, 16 F.4th at 196 (explaining that the Sixth Circuit "has imposed a 'clear

---

[15]   Appendix 1 attached to this brief lists the "Exemplar" and "Non-Exemplar" Defendants.

and unequivocal requirement that a relator allege specific false claims when pleading a violation of' the [FCA]").  Detailed allegations of the "who, what, when, where, and how" of the alleged fraud are required.  *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).  Knowledge and intent may be alleged generally, but the complaint must nevertheless "state with particularity the circumstances (*i.e.*, the time, place, and substance) surrounding the fraudulent activity."  *Bledsoe I*, 342 F.3d at 642.  Rule 9(b)'s rigorous requirements demand specificity as to each and every Defendant.  *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1114 (W.D. Mich. 1996).  The Complaint "may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged."  *Bledsoe I*, 342 F.3d at 643.  Merely alleging a Defendant's participation in a broad-gauged "scheme" to defraud the government is insufficient.   Rather, Relators must plead with particularity both (a) the fraudulent scheme *and* (b) at least one representative false claim violation under Section 3729(a)(1)(G) by each Defendant.  *See*, *e.g.*, *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) ("[I]t is insufficient to simply plead the scheme; [plaintiff] must also identify a representative false claim that was actually submitted to the government.") (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 470 (6th Cir. 2011)).  Among other purposes, the rule is

16

intended "to protect defendants from spurious charges of immoral and fraudulent behavior." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008).

The Relators' allegations must also satisfy Rule 8(a), which requires that the allegations "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a court must accept all factual allegations in the complaint as true," the Court need not accept as true conclusory allegations, and "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint falls short under Rule 8(a) where the allegations do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## ARGUMENT

### I.   THE COMPLAINT FAILS TO PLEAD A REVERSE FALSE CLAIMS ACT VIOLATION AGAINST ANY DEFENDANT

To state a reverse false claim under the FCA against any Defendant, the Complaint must contain allegations that such Defendant either (1) "knowingly . . . made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government"; or (2) "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). For each named Defendant, "pleading an actual false claim with particularity is an indispensable

17

element of a complaint that alleges a FCA violation." *Bledsoe II*, 501 F.3d at 504, 523–24 (affirming dismissal for failure to plead an actual false claim with particularity); *accord Owsley*, 16 F.4th at 197 (same).

### a.    Count I Should Be Dismissed as to the Non-Exemplar Defendants Because the Complaint is Devoid of Specific Factual Allegations Against Them

The Complaint does not contain any particularized factual allegations concerning conduct by any Non-Exemplar Defendant. Under Rule 9(b), for each Defendant, "[t]he identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation." *Owsley*, 16 F.4th at 196; *U.S. ex rel. Winkler v. BAE Sys., Inc.*, 957 F. Supp. 2d 856, 876–77 (E.D. Mich. 2013) (a reverse false claim "requires at least an allegation that the defendant owed the government a debt at the time of the alleged false statement"); *Bledsoe I*, 342 F.3d at 643; *U.S. ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*, 1999 WL 618018 (6th Cir. 1999) ("Rule 9(b) does not permit a plaintiff to allege fraud by indiscriminately grouping all of the individual defendants into one wrongdoing monolith").[16]

---

[16]    *Accord Benoay v. Decker*, 517 F.Supp. 490, 493 (E.D. Mich. 1981) ("each individual defendant must be appraised separately of the specific acts of which he is accused"); *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 964 (E.D. Mich. 2017) ("[A] plaintiff must specify which of the defendants made each fraudulent statement and may not bring claims of fraud against 'the defendants' generally. Collective references to 'the defendants' . . . by themselves fail the specificity test of Rule 9(b)."); *see also Weiland v. Palm*

For Non-Exemplar Defendants other than ISO, the Complaint contains at most (1) the Defendant's identifying information (name, location, and licensure status) and (2) a conclusory assertion that Relators have identified (but not pled) instances where the Defendant "either failed to report its primary payer status to CMS or improperly reported its primary payer status to CMS." *See*, *e.g.*, Compl. ¶ 34. For ISO, the Complaint only alleges, in conclusory fashion, that it concealed the insurers' reimbursement obligations.[17]  *See id.* ¶ 3.  Because the Complaint fails to plead with particularity a reverse false claim by any Non-Exemplar Defendant, Count I must be dismissed as to all of them.  Similar blunderbuss allegations of fraud against "all" Defendants, entirely devoid of any specifics, have been found to be sanctionable in a comparable FCA case alleging MSP Act-related violations.  *See*,

---

*Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (describing same type of "shotgun" pleading here, and "sin" of "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions."); *U.S. ex rel. Lee v. Corinthian Colls*, 655 F.3d 984, 997–98 (9th Cir. 2011) (affirming dismissal of FCA complaint that "fails to set forth each individual's alleged participation in the fraudulent scheme," stating that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

[17]  Indeed, the Complaint does not allege any false statement *by* ISO.  The Complaint only alleges statements *to* ISO and fails to allege ISO's knowledge of, or any agreement to "conceal," alleged false statements by the insurer Defendants.

*e.g.*, *Hayes*, 686 F. App'x at 27–28 (affirming lower court's dismissal with prejudice as a sanction for relator's lack of personal knowledge for his allegation that "all" defendants defrauded Medicare); *U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92 (2d Cir. 2017) (affirming dismissal of FCA complaint arising under the MSP Act that improperly "grouped defendants together and failed to plead facts as to each defendant's obligation to repay the government, an essential element of [relator's] FCA claims").

### b.   Count I Should be Dismissed as to All Defendants for Failure to Plead the Elements of a Reverse False Claim

While the Complaint points to ten so-called "exemplars" in an attempt to particularize reverse false claims, only five of the "exemplars" involve a named Defendant.[18]   However, as with every other Defendant, the allegations as to these

---

[18]   Nine "exemplars" are alleged in Appendix B to the Complaint.  A tenth "exemplar" in paragraphs 527–538 (rather than Relators' appendix) makes allegations against "State Farm Group."  Five of these exemplars relate to entities that are not named Defendants in this action (*see* Compl. ¶¶ 527–38, p. 154–55, 158–59, 160–61, 166–67) and thus, should be disregarded.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370–71 (6th Cir. 2011) (disregarding allegations involving non-parties).  Moreover, at least two exemplars are time-barred.  *See* Compl. p. 166–67 (alleging that "Liberty Mutual Insurance Company," which is not a defendant in this action, failed to reimburse conditional payments that were made in 2011, which is well outside the FCA's six-year statute of limitations, *see* 31 U.S.C. § 3731(b)); Compl. p. 168–69 (alleging Nationwide Mutual Insurance Company failed to reimburse conditional payments that were made in 2013).  Similarly, the retyped alleged excerpts of deposition testimony nearly all relate to non-parties and therefore should be disregarded.  Only one named insurer Defendant (Infinity Auto Insurance Company) is referenced in the deposition excerpts and no excerpt

five Exemplar Defendants do not plead the elements of an actionable reverse false claim under Section 3729(a)(1)(G), let alone satisfy the heightened pleading requirements of Rule 9(b).  Nor could this deficiency be resolved by allowing Relators to amend to add additional "exemplars."

### i.      Relators Fail to Plead Obligations "To The Government"

Each "exemplar" in Appendix B to the Complaint reveals that Relators are not complaining about failures to reimburse the Government, but rather alleged failures to reimburse private health insurer MAOs.  But where, as here, the alleged obligation is owed to a private entity rather than "to the Government," there is no reverse false claim under Section 3729(a)(1)(G).  *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 504 (3d Cir. 2017) (dismissing reverse false claim because federally chartered entity, acting as receiver of private entity, "did not qualify as the Government for the purposes of the FCA"); *U.S. ex rel. Adams v. Aurora Loan Servs.*, *Inc.*, 813 F.3d 1259, 1260–61 (9th Cir. 2016) (Fannie Mae and Freddie Mac did not qualify as the Government for the purposes of the FCA); *see also U.S. ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186 (S.D.N.Y. 2016) (dismissing FCA claim because "[t]he *sine qua non* of a False Claims Act case is that a false claim must be forwarded to the Government, not a private entity").

---

pleads a representative claim or false statement sufficient to state a claim against it, much less against any other Defendant.  *See* Compl. Appx. C–J.

If Congress wanted to impose liability under the FCA for avoiding an obligation to a federal contractor, like a private health insurer MAO, it could have done so. It did not, as evidenced by the plain statutory language of Section 3729(a)(1)(G). The reverse false claims provision stands in contrast to the direct false claims act provision, which expressly authorizes FCA claims arising from fraud on a federal contractor. *Compare* 31 U.S.C. § 3729(a)(1)(A) *and* § 3729(b)(2)(A)(ii) (defining "claim") *with* § 3729(a)(1)(G) *and* § 3729(b)(3) (defining "obligation"); *see Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (where "Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

The Complaint makes passing reference to an "indirect reverse false claim" theory, predicated on the contention that insurers' alleged failures to reimburse MAOs caused "Government Health Programs" to pay "government contractors" more than they otherwise would have paid. Compl. ¶ 16 & n.8 (citing *United States v. Caremark, Inc.*, 634 F.3d 808, 815–17 (5th Cir. 2011)). Under *Caremark,* however, the Complaint still must plead that a defendant's conduct impaired "an obligation to pay or transmit money or property to the Government." 634 F.3d 816–17. Speculation that, in the next contracting cycle, MAOs will raise their bids for continuing to provide services to Medicare beneficiaries at a capitated rate as a result

of the insurer Defendants' alleged failures to reimburse them and that this will result in a future loss to the Government is not sufficient.  *See* Compl. ¶¶ 370–84.[19]  The FCA's reverse false claims provision addresses fraudulent conduct that impairs *existing* obligations to the Government, not conduct that allegedly will result in future loss based on an attenuated theory of causation.  *See* 31 U.S.C. § 3729(b)(3) (defining "obligation" as an "established duty").  As the Third Circuit has explained, an "obligation" under the FCA refers to an established duty "to pay the Government funds" that existed "at the time that the alleged improper conduct under the FCA occurred."  *Petras*, 857 F.3d at 505–06; *accord Ibanez*, 874 F.3d at 917 (affirming dismissal of a reverse false claim when "relators provide no facts showing defendants were under an affirmative obligation to the government at the time the alleged false statements were made").  The Complaint does not identify an existing obligation, nor one owed to the Government by the MAOs or anyone else at the time of the alleged improper conduct.

---

[19]     Medicare's payments to MAOs are based upon a statutory formula.  *See* 42 U.S.C. § 1395w-23(a)(1)(B).  In exchange for the flat fee it receives from Medicare, the MAO, as a private contractor, bears financial risk for the cost of providing all medically necessary benefits covered by Medicare.  Therefore, whether or not an insurer Defendant paid an MAO for treating a particular Medicare beneficiary, Medicare bears no more (or less) cost for that treatment.

### ii.    Relators Also Fail to Plead Any Defendant Owed a Financial "Obligation" at All

None of the "exemplars" even alleges facts that, if true, demonstrate an insurer Defendant owed an "obligation" to reimburse an MAO for the medical expenses described within the meaning of the FCA.  An "obligation" is an "established duty" to pay or transmit money.  31 U.S.C. § 3279(b)(3).  "[T]here is no liability for obligations to pay that are merely potential or contingent." *U.S. ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1231 (10th Cir. 2017).  The MSP Act provides that the Secretary of Health and Human Services may make a conditional payment for an item or medical service covered by Medicare only when the primary payer "cannot reasonably be expected to make payment with respect to such item or service promptly."  42 U.S.C. § 1395y(b)(2)(B)(i).  Then, the primary payer "shall reimburse" the conditional payment "if it is demonstrated that such primary plan has or had a responsibility to" pay. *Id.* § 1395y(b)(2)(B)(ii).  The "exemplars" contain no factual allegations to support an inference that these statutory requirements were met with respect to any medical expense paid by an MAO.[20] *See DaVita, Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan,* 978 F.3d 326, 337 (6th Cir. 2020) ("The MSPA's private-cause-of-action provision requires a conditional payment by Medicare").

The Complaint's bare allegation that an insurer Defendant reported to CMS (either directly or through ISO), and pursuant to Section 111, that it received a claim

from a Medicare beneficiary is insufficient to plead that the insurer Defendant had an "obligation" to reimburse under the FCA. *See* Compl. ¶ 11 (alleging Defendants misreported claims to Medicare). Reporting requirements arise whenever an insurance company becomes aware that an injured person may be a Medicare beneficiary and an insurance policy may cover those injuries, "*regardless of whether or not there is a determination or admission of liability*." 42 U.S.C. § 1395y(b)(8)(C) (emphasis supplied). However, it is often the case that the reporting insurance company is not ultimately responsible for the given Medicare beneficiary's medical expenses (*e.g.*, because there is no finding of liability or because the medical expenses at issue were not tied to the accident). The mere fact of reporting does not plead an "obligation" by the reporting insurance company to pay money.[21] *See MSP Recovery Claims, LLC v. Metro. Gen. Ins. Co.*, 2021 WL 804716 at *2 (S.D. Fla. Mar. 3, 2021) (dismissing complaint under MSP Act, where defendants argued that "just because Defendants reported a claim to CMS does not demonstrate Defendants' responsibility for any particular expense"); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *6 (S.D.N.Y. Mar. 26, 2021) (rejecting "underlying premise" of MSP Act complaint that "if a

---

[21] Examples of such circumstances are reflected in the Supplemental Briefs of The Travelers Indemnity Company and the Progressive Defendants.

25

claim is reported to CMS, then any medical expense that may be associated with the claim is reimbursable" as "factually inaccurate").

### iii.   Alleged Section 111 Reporting Deficiencies Are Not False Statements, and the Complaint Does Not Allege Concealment or Improper Avoidance of an Obligation

To state a reverse false claim against a defendant under the first prong of Section 3729(a)(1)(G), Relators must allege that the defendant "made [a] false statement for the purpose of avoiding payment." *U.S. ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2857372, at *11 (D. Idaho 2008) ("*Mason I*"). Relators have made no such allegation here. Relators make the entirely unsupported and conclusory assertion that insurer Defendants "either failed to report [their] primary payer status to CMS or improperly reported [their] primary payer status to CMS." *See*, *e.g.*, Compl. ¶ 27. The Complaint contains zero details whatsoever about these alleged reports and plainly does not satisfy Rule 9(b). In fact, the "exemplars" contradict this conclusory allegation. They allege that, with respect to the Medicare beneficiary described, the insurer ***did*** report accident-related data to ISO (the entity the insurer Defendants are alleged to have contracted with to *fulfill* their Section 111 requirements) regarding the enrollee.[22] This directly undermines

---

[22]   While allegations in a complaint typically must be taken as true at the motion to dismiss stage, MSP WB knows that the State Farm Defendants do not contract with ISO for Section 111 reporting but instead report directly to CMS. *See* Declaration of Susan Maynard ¶ 4, ECF No. 25-2, *MAO-MSO*

the existence of an overall "scheme" not to report potential liability posited in the Complaint.[23]

Under the second prong of Section 3729(a)(1)(G), the Complaint must plead some form of conduct by a Defendant calculated to "knowingly conceal" or "improperly" avoid or decrease an obligation to pay.  31 U.S.C. § 3729(a)(1)(G). Neither the "exemplars" nor anything else in the Complaint alleges that a Defendant knowingly concealed or avoided an obligation, or engaged in any other deceptive conduct.  There are no allegations of the "who, what, when, where, and how" of deceptive conduct by any Defendant—let alone *each* Defendant—that was intended to conceal or improperly avoid or decrease an obligation to the Government. *See Sanderson*, 447 F.3d at 877.

---

*Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 1:17-cv-01541 (S.D. Ill. 2017).

[23]  The Complaint baldly alleges that "Defendants certified their compliance when submitting quarterly reports to CMS" and that "the certification was false."  Compl. ¶ 549.  Relators' vague allegations do not provide any information as to what false "certification" they allege Defendants have made. Also, Relators have not pled with particularity any facts demonstrating that Defendants "knowingly" submitted false certifications, let alone what certifications were submitted, when, by whom, and that such certifications were material to a reimbursement obligation.  As explained above, the Complaint does not plead any such statements under either the direct or indirect reverse false claim theory, let alone in such a way that satisfies Rule 9(b).

### iv.    Relators Fail to Plead Scienter

The Complaint is devoid of well-pled facts that support a plausible inference of any Defendant acting with scienter, *i.e.*, "knowingly" making a false statement or engaging in deceptive conduct.  31 U.S.C. § 3729(a)(1)(G).  "Knowingly" requires actual knowledge, deliberate ignorance, or (at a minimum) reckless disregard of the truth.  31 U.S.C. § 3729(b)(1)(A).  In the context of a reverse false claim, this scienter requirement applies to a defendant's "awareness of both an obligation to the United States and his violation of that obligation."  *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 436 (6th Cir. 2016).

Accordingly, unless the Complaint alleges "that a defendant knows of, or acts in deliberate ignorance or reckless disregard of, the fact that he is involved in conduct that violates a legal obligation to the United States, the defendant cannot be held liable under the FCA."  *Id.* at 437 (internal quotation marks omitted).  Moreover, the allowance in Rule 9(b) for a relator to allege knowledge generally does not "give [him] license to evade the less rigid—though still operative—strictures of Rule 8."  *Iqbal*, 556 U.S. at 665.  Therefore, courts dismiss FCA complaints where, as here, the relator fails to plead plausible allegations that each defendant acted knowingly. *See, e.g.*, *U.S. ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2486339, at *6–8 (D. Idaho 2009) ("*Mason II*"); *see also Iqbal*, 556 U.S. at 686–87.

In *Mason II*, for example, the relator, a beneficiary whose hospital bill was conditionally paid by Medicare before State Farm MAIC conceded medical coverage liability, alleged that State Farm MAIC committed a reverse false claim violation by not later repaying Medicare. *Id.* at *1–3. The relator alleged that State Farm MAIC knew that a hospital bill had been generated, knew it had not paid the hospital directly, and knew of medical records showing the beneficiary was Medicare-eligible. *Id.* at *6–7. The district court held that those knowledge allegations were insufficient because the complaint did "not allege that State Farm knew Medicare ha[d] made the payment . . . or that State Farm knew it had an existing duty to repay Medicare." *Id.* at *8.

The same deficiencies doom the Complaint in this action. As in *Mason II*, the Complaint here does not allege, with respect to any "exemplar" or otherwise, facts to support an inference either that (i) a Defendant knew Medicare (or an MAO) had paid a given beneficiary's medical expense, or (ii) the insurer Defendant knew it had an existing duty to reimburse those expenses under the MSP Act. The Complaint's allegations undercut the notion that any Defendant acted with a knowing intent to avoid obligations to the Government. The Complaint alleges that each insurer Defendant contracted with ISO to report Section 111 data to the Government on its behalf and acknowledges that each Exemplar Defendant, in fact, reported the particular beneficiary's claim to ISO. *See* Compl. ¶ 421; Appx. B, p. 156,

¶ 12, p. 162, ¶ 12, p. 165, ¶ 13, p. 169, ¶ 12, p. 171, ¶ 10. The only plausible inference that can be drawn from this conduct is that the insurer Defendants intended to comply with their reporting requirements. Likewise, there is no allegation of a knowingly false statement by ISO.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM THAT DEFENDANTS ALL CONSPIRED TO VIOLATE THE FCA (COUNT II)

The Complaint includes one count of conspiracy, alleging that all 316 insurer Defendants conspired with Defendant ISO to violate the FCA. Compl. ¶¶ 557–65. The threadbare conspiracy allegations do not satisfy Rule 9(b).

"Rule 9(b)'s heightened pleading standard applies to FCA claims of conspiracy to defraud the government." *U.S. ex rel. Dennis v. Health Mgmt. Assocs.*, 2013 WL 146048, at *17 (M.D. Tenn. 2013) (citing *U.S. ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008)). "Under Rule 9(b), general allegations of a conspiracy, without supporting facts to show when, where or how the alleged conspiracy occurred, amount to only a legal conclusion and are insufficient to state a cause of action." *Dennis*, 2013 WL 146048, at *17 (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106–07 (9th Cir. 2003)). "[I]t is not enough for relators to show there was an agreement that made it likely there would be a violation of the FCA; they must show an agreement was made in order to violate the FCA." *Ibanez*, 874 F.3d at 917 (dismissing conspiracy claim in the absence of a

"specific statement showing the plan was made *in order to* defraud the government").

A civil conspiracy, including one under 31 U.S.C. § 3729(a)(1)(c), "consists of 'an agreement between two or more persons to injure another by unlawful action.'" *U.S. ex rel. O'Laughlin v. Radiation Therapy Servs.*, 497 F. Supp. 3d 224, 241 (E.D. Ky. 2020) (quoting *U.S. v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991)). What "must be shown is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *O'Laughlin*, 497 F. Supp. 3d at 241 (quoting *Murphy*, 937 F.2d at 1039).

As a threshold matter, because the Complaint does not allege a single substantive violation of the FCA by any Defendant, *see supra* Point I, the claim of a conspiracy among all Defendants to violate the FCA fails as a matter of law. *See U.S. v. Wal-Mart Stores E., LP*, No. 20-2128, 2021 WL 2287488, at *3 (6th Cir. 2021); *U. S. ex rel. Holbrook v. Brink's Co.*, 336 F. Supp. 3d 860, 873–74 (S.D. Ohio 2018) ("Under the FCA, there can be no liability for conspiracy where there is no underlying violation of the FCA.") (quotations omitted).

In addition, the Complaint fails to plead with particularity anything about the existence of an agreement between Defendants to defraud the Government, such as how or when it was reached.  The absence of any alleged conspiratorial agreement

between ISO and any insurer is fatal.[24]  *See Winkler*, 957 F. Supp. 2d at 876 (dismissing conspiracy count under FCA where relator never "attempts to plead any facts in support of such a claim"); *Dennis*, 2013 WL 146048, at *17 (dismissing conspiracy claim for failing to plead the "when, where or how" of a conspiratorial plan or any overt act committed in furtherance of that plan).  Moreover, as to ISO, the only factual allegations of a "conspiracy" are: (1) that ISO canceled a contract with MSP Recovery LLC it had the right to cancel and (2) that the contract had nothing to do with ISO's Section 111 reporting.  Compl. ¶¶ 491–98.

## III.  THE FCA'S PUBLIC DISCLOSURE BAR COMPELS DISMISSAL OF THE COMPLAINT

To guard against "parasitic lawsuits" and "opportunistic plaintiffs," the FCA's "public disclosure bar" mandates dismissal of FCA claims that echo publicly disclosed information.  *U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 522 (6th Cir. 2020).  Under this "wide-reaching" bar, *U.S. ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 851 (6th Cir. 2020), courts must "dismiss an action or claim under [the FCA] . . . if *substantially the same* allegations or transactions as

---

[24]  *See Ibanez*, 874 F. 3d at 917 ("the absence of such a conspiratorial statement . . . renders insufficient the otherwise bare allegation that there was a FCA conspiracy"); *U.S. ex rel. Lada v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016) (affirming that a "claim of conspiracy to violate the FCA was deficient because the [complaint] 'fails to identify a specific statement where [defendants] agreed to defraud the government'").

alleged in the action or claim were publicly disclosed" through one of three so-called "channels": (1) in a "Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;" (2) "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation;" or (3) "from the news media," unless "the person bringing the action is an original source," 31 U.S.C. § 3730(e)(4)(A) (emphasis added).[25]  An original source is a person who either (i) prior to a public disclosure, voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based or (ii) has knowledge that is independent of and materially adds to the publicly disclosed allegations.  31 U.S.C. § 3730(e)(4)(B).  *See* Section III(c), *infra*.

Relators' generalized, sweeping allegations of MSP Act noncompliance by insurers at the expense of the Government are substantially the same as (since discredited) allegations made in the public domain long before the Complaint was filed in June 2021.  Allegations are "substantially the same" as allegations previously disclosed to the Government if the prior allegations revealed "the essential elements of the alleged fraud" and were enough "to expose the fraudulent transaction" alleged

---

[25]    "[H]earing" "encompasses more than formal or evidentiary hearings and includes court filings generally" in federal actions in which the Government or its agent was a party.  *U.S. ex rel. Am. Sys. Consulting, Inc. v. Man Tech Advanced Sys. Int'l Inc.*, 2012 WL 12929898, at *5 (S.D. Ohio 2012) (considering "hearing" in public disclosure bar pre-amendment).

in the complaint. *Maur*, 981 F.3d at 523. The "key inquiry" is whether the disclosures could have put the "government on notice of the fraud alleged in the *qui tam* complaint." *Id.* The prior disclosure need not use the word "fraud" to bar an FCA claim. *Holloway*, 960 F.3d at 844. "Nor does the [prior] allegation have to be exactly what Relators allege" in order to qualify as a public disclosure. *Dingle v. Bioport Cor.*, 388 F.3d 209, 214 (6th Cir. 2004) (citation omitted); *Maur*, 981 F.3d at 523 ("There need not be a complete identity of allegations, even as to time, place, and manner"—there need only be "a substantial identity between the prior disclosures and the *qui tam* complaint"). "It is not enough . . . to allege new, slightly different, or more detailed factual allegations" than what was previously disclosed. *Id.* at 525. In addition, "[d]isclosure can arise from multiple documents taken together, rather than from a single document." *Holloway*, 960 F.3d at 844.

Here, multiple failed lawsuits to which the Government, or its agent, was a party and dozens of news articles[26] revealed the "essential elements" of the alleged fraud and were enough to put the Government on notice of the so-called fraudulent scheme alleged by Relators: insurers' supposed failure to comply with reimbursement obligations under the MSP Act (*see*, *e.g.*, Compl. ¶¶ 539–43) and

---

[26]    Defendants have concurrently filed the public disclosures. *See* RJN, Exs. 1–37 (news articles, two prior *qui tam* complaints, and complaint in Government enforcement action).

supposed failures to properly report pursuant to Section 111 (*see*, *e.g.*, *id.* ¶¶ 479, 485). Relators' allegations add nothing to those already in the public arena, and their Complaint fails to establish Relators as the "original source" of the allegations. Accordingly, the FCA's public disclosure bar compels dismissal.

### a. Prior Government and *Qui Tam* Lawsuits Have Asserted That Insurers Intentionally Fail to Reimburse Under the MSP Act

In 2009, the Government filed an MSP Act-enforcement suit against insurers and others who participated in a large class action settlement. *See U.S. v. Stricker*, No. CV-09-PT-2423-E (N.D. Ala. 2009). The *Stricker* lawsuit alleged that insurers made settlement payments to Medicare beneficiaries without ensuring reimbursement to Medicare (albeit not MAOs) for conditional payments. The news media widely reported on the *Stricker* case, detailing the Government's signaled "intent to be aggressive in seeking reimbursement" for conditional payments. The court ultimately dismissed *Stricker* on statute-of-limitations grounds. *U.S. v. Stricker*, 2010 WL 6599489, at *1, *13 (N.D. Ala. Sept. 30, 2010).

Relators' parasitic claims also regurgitate nearly identical allegations and claims asserted in previously declined (and now-dismissed) *qui tam* actions against many of the same Defendants here. In the past decade, at least two *qui tam* lawsuits against insurers, including against five of the Defendant "Groups" named in this action, have been filed alleging nationwide schemes to avoid reimbursement of conditional payments under the MSP Act. *See, e.g., U.S. ex rel. Hayes v. Allstate*

*Ins. Co.*, 2016 WL 463732, at *1 (W.D.N.Y. 2014); *Takemoto*, 2015 WL 13239436 (W.D.N.Y. 2015).  In *Hayes*, the relator alleged an industry-wide failure (involving over sixty defendants, including dozens of insurance companies) "to remit payment to Medicare that was due and owing under the [MSP Act and] fail[ed] to report" pursuant to Section 111 in violation of the reverse false claims provision of the FCA. *See Hayes* Am. Compl. ¶¶ 379, 413, No. 1:12-cv-01015-WMS-JJM (W.D.N.Y. April 22, 2014).[27]  Specifically, Relator Hayes alleged that "in a nationwide scheme, [the insurers] knowingly concealed and/or knowingly and improperly avoided or decreased their obligation to pay or transmit money or property to the government by not reimbursing Medicare" and "did not ensure that Medicare was fully reimbursed for the conditional payments Medicare made on the beneficiaries' behalf."  *Id.* ¶ 420.  With respect to Section 111 reporting, Hayes alleged that the insurers were "required to determine whether a claimant . . . was entitled to Medicare benefits" and provide "the claimant's identity and other such information needed to ultimately ensure reimbursement"—but failed to do so.  *Id.* ¶¶ 375, 376.  The United States declined to intervene[28] in the case, and it ultimately was dismissed with

---

[27]     *See* RJN, Ex. 37.

[28]     "[T]he *qui tam* relator is, in all cases, the government's agent for purposes of § 3730(e)(4)(A)(i)."  *Holloway*, 960 F.3d at 845.  Thus, the Government need not intervene in a *qui tam* action for filings in that action to constitute public disclosures.

36

prejudice. *See Hayes*, 2016 WL 463732, at *1. The Second Circuit affirmed dismissal. *Hayes*, 853 F.3d at 86.

In *Takemoto,* relator Kent Takemoto, the owner of an MSP Act "compliance company" supposedly aimed at "help[ing] insurers comply with their MSP obligations," filed a *qui tam* suit against numerous insurance-industry participants, similarly alleging that insurers industry-wide were not complying with their MSP Act reporting or repayment obligations. *Takemoto* Am. Compl. ¶¶ 5–7, 51, 95, 1:11-cv-00613-WMS-JJM (W.D.N.Y. Oct. 31, 2014).[29] *Takemoto* alleged that dozens of insurer "parent corporation" defendants committed reverse false claims violations by "outright refus[ing]" to repay conditional payments made by CMS on behalf of Medicare beneficiaries with whom the defendant insurers had reached a settlement, judgment, or award. *Id.* ¶¶ 5, 69. Takemoto alleged the defendant insurers[30] "were aware of their obligations to make such payments" and "[d]espite such knowledge"

---

[29]    *See* RJN, Ex. 36.

[30]    While not all Defendants in this action were named in the *Takemoto* and *Hayes qui tam* actions, the filings in those actions—asserting claims against 45 and 56 insurance industry participants, respectively—"alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation." *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011); *see also Holloway*, 960 F.3d at 844 (holding that "prior disclosures describ[ing] 'industry-wide abuses and investigations'" could be sufficient to invoke the public disclosure bar against a particular defendant).

continued to avoid repaying the government. *Id.* ¶¶ 70–71. Takemoto further alleged that the defendants "routinely lacked procedure" in areas "essential to MSP compliance" and "deliberately refuse[d]" to learn whether claimants were Medicare beneficiaries. *Id.* ¶¶ 5, 63. As in *Hayes*, the United States declined to intervene, and the court granted defendants' motion to dismiss. *See U.S. ex rel. Takemoto v. The Hartford Fin. Servs. Grp.*, 157 F. Supp. 3d 273, 277 (W.D.N.Y. 2016). The Second Circuit affirmed. *Takemoto*, 674 F. App'x at 96.

Here, Relators repackage allegations made in *Stricker*, *Hayes*, and *Takemoto* that insurers failed to reimburse payments made to Medicare beneficiaries by deliberately refusing to learn whether a claimant was a Medicare beneficiary. *Compare Takemoto* Am. Compl. ¶ 5 ("Defendants either deliberately refuse to learn whether a claimant was a Medicare beneficiary (or otherwise determine whether any payment to Medicare is owed) and thus avoid reimbursing the Government for its conditional payments or outright refuse such repayment despite knowing that it is owed"), *with* Compl. ¶¶ 472, 473 ("The Primary Plans routinely fail to meet their obligations to Government Healthcare Programs by . . . deliberately refusing to determine if the claimant was a Government Healthcare Program beneficiary to determine whether any repayment was owed . . . and thus fail[] to repay conditional payments."); *compare Takemoto* Am. Compl. ¶ 6 (alleging that "Defendants have knowingly and improperly avoided their obligations to repay the federal government

for medical services provided to tens of thousands of Medicare beneficiaries"), *with* Compl. ¶ 511 (alleging "tens of thousands of instances wherein the Primary Plans failed to report their primary payer responsibility causing government health programs to reimburse for the beneficiaries' accident-related medical expenses").

Relators' allegation that insurer Defendants failed to adopt procedures to satisfy Section 111 reporting requirements are also recycled from *Takemoto*. *Compare Takemoto* Am. Compl. ¶ 63 ("Defendants routinely lacked procedures . . . that would allow them [to] identify Medicare beneficiary status of claimants" and "report liability and no-fault settlements, judgments or awards involving Medicare beneficiaries to CMS"), *with* Compl. ¶ 4 ("Primary Plans cannot satisfy Section 111 because the procedures they have in place are set up to fail at the outset.").

### b. The News Media Have Widely Reported (Discredited) Allegations That Insurers Purportedly Fail to Comply With the MSP Act and Reimburse Conditional Payments

The news media have also widely reported on a multitude of previously filed and unsuccessful lawsuits alleging failures by insurers to reimburse conditional payments under the MSP Act.  By Relator MSP WB's own account, its many affiliates have "sued numerous [] insurance companies throughout the United States to recover damages as a result of alleged MSP Act violations."  *See* Compl. ¶ 476.[31]

---

[31]    MSP Recovery has filed (1) at least 123 federal cases, of which almost 100 have been closed (dismissed, withdrawn, or otherwise ended), and (2) at least 21 state cases, of which 19 have been closed.  Many of these lawsuits allege

The news media regularly reports on these lawsuits.[32]  For example, one news source reported that MSP Recovery seeks to:

> **recover reimbursements on behalf of health insurance plans and Medicare Advantage Organizations from primary payers that neglected to pay medical claims they were legally required to pay** . . . [the pending case] is **among hundreds of similar cases** being brought by MSP Recovery in state and federal courts nationwide . . . **MSP Recovery currently has more than 60 related class actions pending against different auto insurers** and is in the process of filing an additional 300-plus class-actions nationwide on similar grounds.[33]

These articles disclose the "essential elements" of Relators allegations here: that insurers have purportedly evaded their obligations to repay MAOs for conditional payments.  The allegations in this Complaint even phrase the allegations in the same way they were previously reported in the news media (and in MSP

---

industry-wide violations of the MSP Act by insurers by, among other things, intentionally evading requirements to reimburse MAOs and knowingly failing to report their status as primary payers.  *See* RJN, Ex. 47 (chart of facts of cases).

[32]   Attached at RJN, Exs. 1–34 is a compendium of 34 news articles collectively disclosing the essential elements of the conduct alleged by Relators here.

[33]   RJN, Ex. 25 (BusinessWire, *MSP Recovery Wins First-Ever Certifications for Class-Action Lawsuits* (May 9, 2017), *available at* https://www.businesswire.com/news/home/20170509005925/en/MSP-Recovery-Wins-First-Ever-Certifications-for-Class-Action-Lawsuits (emphasis supplied)).  The class certification addressed in the article was later reversed on appeal.  *IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC*, 263 So. 3d 122, 124 (Fla. Dist. Ct. App. 2018).  It has since been re-certified and an appeal of that decision is pending.

Recovery LLC and its affiliates' prior actions).  *Compare* RJN, Ex. 28[34] ("liability insurers across the country [are] allegedly shirking their duty to reimburse Medicare benefit providers for conditional payments") *with* Compl. ¶ 454 ("The Primary Plans, as the liable third parties, have been shirking their reimbursement obligations").

While the articles do not specifically identify all Defendants named here, the public disclosure bar does not require that the previously disclosed "industry-wide" allegations specifically identify a particular defendant.  *See Holloway*, 960 F.3d at 844 (holding that "prior disclosures describ[ing] 'industry-wide abuses and investigations'" could be sufficient to invoke the public disclosure bar against a particular defendant); *In re Natural Gas Royalties Qui Tam Litig.*, 562 F.3d 1032, 1041 (10th Cir. 2009) (public disclosures not naming specific defendants but alleging "large scale" fraud in the oil and gas industry were sufficient to "set the government squarely upon the trail of the alleged fraud"); *U.S. v. Emergency Med. Assocs.*, 436 F.3d 726, 729 (7th Cir. 2006) ("We are unpersuaded by an argument that for there to be public disclosure, the specific defendants named in the lawsuit must have been identified in the public records.").  The public disclosure bar applies

---

[34]   Daily Business Review, *How a Miami Law Firm Plans to Recover Billions For Medicare* (Apr. 7, 2017), *available at* https://www.law.com/sites/almstaff/2017/04/07/how-a-miami-law-firm-plans-to-recover-billions-for-medicare/.

if the prior reporting "alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation." *Jamison*, 649 F.3d at 329. That is clearly the case here. The repeated disclosures in news articles of the dozens of lawsuits asserting that insurers, industry-wide, have supposedly shirked reimbursement responsibilities to MAOs under the MSP Act were sufficient to alert the Government of the "essential elements" of the wrongdoing and enable the Government to investigate long before Relators filed this action.

The foregoing discussion provides just a few, illustrative examples of the prior public disclosures of Relators' core allegations. There are more. *See* RJN Exs. 1–37 (compendium of prior public disclosures).

### c. Relators Cannot Demonstrate That They Are "Original Sources"

Nor can Relators avoid the public disclosure bar by calling themselves "original sources" of the information underlying their allegations. Relators claim to be "original sources" under 31 U.S.C. § 3730(e)(4)(B), which requires that either (i) prior to a public disclosure, they voluntarily disclosed to the government the information on which the Complaint's allegations are based; or (ii) they have knowledge that is independent of and materially adds to the publicly disclosed allegations, and they provided that information to the Government before filing this

action.  *U.S. ex rel. Guzall v. City of Romulus*, 2017 WL 3394751, at *10 (E.D. Mich. 2017).  Relators do not satisfy either prong.

Relators' conclusory allegation that they "voluntarily provided the material information they possess about Defendants' violations" of the FCA and MSP Act to the Government "before filing this action," Compl. ¶ 361, is insufficient to satisfy the first prong.  *See Harper*, 2015 WL 7575937, at *7 (dismissing similar boilerplate allegation; "[w]ithout some indication as to the content and date of this disclosure or the basis for the relators' knowledge, this conclusory allegation fails to permit the Court to test whether relators qualify as original sources under the FCA"); *U.S. v. Univ. of San Francisco*, 2006 WL 335316, at *5 (N.D. Cal. 2006) (dismissing FCA claim where plaintiff baldly alleged that she "voluntarily notified the government before filing this suit" but failed to provide any factual allegations in support).  The Complaint fails to provide the content, date, or nature of the information that each Relator allegedly disclosed to the Government or to establish that the disclosure occurred prior to the myriad public disclosures as required by Section 3730(e)(4)(B)(i).  *See Harper,* 2015 WL 7575937 at *7.[35]

---

[35]  Although Angelo's original *qui tam* complaint attached Angelo's disclosure statement as an exhibit, *see* ECF No. 1-2, that disclosure statement simply provides an irrelevant "[b]ackground on the [o]pioid [c]risis" and a general discussion of the Medicare and Medicaid laws before discussing the purported fraudulent scheme by only one of the Defendants named in the operative Complaint.  *See id.*

Furthermore, Relator MSP WB was incorporated in January 2021 and therefore *did not even exist* at the time of the public disclosures or at the time of the conduct alleged in the Complaint.   It could not have voluntarily disclosed information prior to the disclosures.  *See* Ex. 46 (Del. Dep't of State Div. of Corp. Filing); *see also Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995) (litigation vehicle could not establish that it was an original source when the corporation was formed after the events giving rise to the litigation allegedly occurred); *U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 554 (10th Cir. 1992) (corporation was not the original source of information collected by its majority shareholder and president prior to the corporation's incorporation).

Nor have Relators satisfied the second prong of 31 U.S.C. § 3730(e)(4)(B)(ii). MSP WB asserts that it knows about Defendants' purported fraud through its proprietary "MSP System," which it allegedly "designed and developed." Compl. ¶ 11.  But the "MSP System" was in fact "designed and developed" by a *different* corporate entity—MSP Recovery, LLC—years before MSP WB was created.[36]  Indeed, Relators' counsel in this case has publicly stated that "[t]his case

---

[36]     A representative of MSP Recovery, LLC testified that it is "the owner of the MSP System."  RJN, Ex. 42 (*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, Deposition of Jorge Lopez, Tr. at 41:13–19).  MSP Recovery, LLC's Chief Information Officer has testified that MSP Recovery, LLC employs developers who created the system.  *See* RJN, Ex. 43 (*MSP*

is based on what *MSP Recovery* has seen over the last seven years as auto insurers

knowingly and willfully turn a blind eye and evade their obligations to Medicare."[37]

The fact that MSP WB and MSP Recovery, LLC are affiliates is not sufficient for

MSP WB to satisfy the original source exception to the public disclosure bar.

*See U.S. ex rel. Koerner v. Crescent City E.M.S.*, 946 F. Supp. 447, 453–54 (E.D.

La. 1996) (dismissing FCA claims pursuant to public disclosure bar where relator

had created corporate entity to pursue substantially similar FCA claims disclosed in

prior action by related corporate entity); *see also MSP Recovery Claims, Series LLC*

*v. N.Y. Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *6 (N.D.N.Y. 2019) (calling

an MSP Recovery affiliate's attempt to conflate its corporate identity with that of a

different affiliate an "abuse of corporate form").   The Complaint is wholly devoid

of factual allegations that MSP WB or Angelo have knowledge independent of

---

*Recovery Claims, Series LLC v. United Auto. Ins. Co.*, Deposition of
Christopher Miranda, Tr. at 13:14–22).  MSP Recovery, Series LLC has
alleged in pleadings authored by the same counsel who represents Relators
in this case that the "MSP System" is the creation of MSP Recovery, LLC.
*See* RJN, Ex. 44 (Second Am. Compl. ¶ 61, *MSP Recovery Claims, Series
LLC v. The Travelers Indemnity Co., et al.*); *see also* RJN, Ex. 45 (First Am.
Compl. at ¶ 23, *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*).

[37]   Lyle Adriano, "'Whistleblower' lawsuit names 315 auto insurers,"
INSURANCE BUSINESS AMERICA (Aug. 20, 2021), *available at*
https://www.insurancebusinessmag.com/us/news/breaking-
news/whistleblower-lawsuit-names-315-auto-insurers-302901.aspx
(emphasis supplied).

information possessed by MSP Recovery, LLC.  Even the "exemplars" appended to the Complaint were obtained from non-parties—contradicting any claim that Relators' knowledge of them is independent.  Compl. ¶ 21 (noting that claims are assigned to "[a]ffiliates of MSP [WB]" and not to MSP WB).

Further, Relators' allegations do not materially add to prior public disclosures.  To satisfy the materiality requirement, the Relator must allege new information that "would affect the government's decision-making." *Maur*, 981 F.3d at 525.  In other words, Relators "must bring something to the table that would add value for the government." *Id.*  Merely providing further conclusory allegations of the same type of failure to reimburse MAOs that has already been widely and publicly disclosed is insufficient.  *See id.* at 527–28 (relator's "allegations are neither novel nor so removed from the 'resolved' conduct that we can say that he has added anything 'material' to the 'prior problematic [procedures] already disclosed' by the [earlier] action.").  As set forth above, scores of cases brought by MSP Recovery and its affiliates have made the same claims alleged here.[38]

---

[38]    Relators' allegations of fraud here mirror claims made by MSP WB's affiliates in almost 150 similar complaints filed across the country. *Compare* RJN, Ex. 41 (First Am. Compl., *MSP Recovery Claims, Series LLC v. The Travelers Indem. Co.*) at ¶¶ 1, 58, *with* Compl. ¶ 15 (alleging that Defendants "intentionally and systematically fail to . . . reimburse Government Healthcare Programs").  Like the Complaint here, these prior complaints allege that insurers avoid their repayment obligations by "underreporting and misreporting" to CMS. *Compare* RJN, Ex. 41 ¶ 66, *with* Compl. ¶ 15 (alleging

Even assuming the "exemplars" are independent of prior disclosures, on their face, they would not be material to the Government's decision-making. "[O]ffering specific examples of the alleged fraud does not provide any significant new information where the underlying conduct already has been publicly disclosed." *U.S. ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 831 (6th Cir. 2021) (cleaned up). The conduct described in the "exemplars" has been asserted in dozens of lawsuits filed by MSP Recovery and its affiliates across the country, reported upon extensively in the news, and disclosed in prior *qui tam* actions. At most, the "exemplars" "merely provid[e] additional instances of the same type of [alleged] fraud" that was already publicly disclosed, which the Sixth Circuit has repeatedly held is not the type of information that "would affect the government's decision-making." *Id.* at 831–32 (quotation marks omitted); *see also Maur*, 981 F.3d at 528; *U.S. ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431 (6th Cir. 2016) (finding that examples described by relator did not "materially add to the thousands of prior problematic foreclosures already disclosed. There is nothing significant or new about the nature of these foreclosures other than proof that there were others like them. That doesn't add anything, materially or otherwise.").

---

"failure to report, and correct misreporting"). Relators bring nothing new to the table independent from what has already been disclosed.

**IV.    COUNT III DOES NOT ADEQUATELY PLEAD CLAIMS UNDER STATE OR PUERTO RICO LAW**

Relators also attempt to assert—within a single count of the Complaint—claims under the false claims or Medicaid fraud statutes of California, Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, Rhode Island, Texas, and Puerto Rico.  Compl. ¶¶ 567–610.  Relators fail to state a claim under any of these statutes.

Relators' claims under state and Puerto Rico law are all predicated on Relators' conclusory statements that, "[t]hrough the acts described above, the Primary Plans knowingly caused to be presented to [various states] records or statements to conceal, avoid or decrease their obligation to reimburse Medicaid . . . .").  Compl. ¶ 572.  This does not satisfy Rule 9(b)'s heightened pleading requirements because Relators fail to allege the "who, what, when, where, and how of the alleged fraud" perpetrated against each State and Puerto Rico.  *Sanderson*, 447 F.3d at 877.  "Particularized allegations of an actual false claim is an indispensable element of an FCA violation" and "at a minimum, the complaint must allege the time, place, and content of the alleged misrepresentation."  *Bledsoe II*, 501 F.3d at 505.  Where a complaint as a whole provides only the alleged "contours of a scheme to submit false claims in the [] states, the lack of reliable indicia handcuffs the Court from finding a strong inference of submitted false claims" and the Court must dismiss the state claims.  *U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2021 WL

48

4502275, at *6 (N.D. Tex. 2021).  Even  under Rule 8(a), "[f]ormulaic assertions

that merely repeat statutory language are insufficient to survive a motion to dismiss."

*Ibanez*, 874 F.3d at 917 (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P.

8(a)(2).

Relators' broad brush claims fail because Relators do not link the factual

predicate of their entire lawsuit—that insurer Defendants purportedly fail to comply

with their Section 111 reporting requirements—with any false claim made upon any

Medicaid agency of a State or Puerto Rico.[39]  This is not surprising because Section

111 imposes a *federal Medicare* reporting requirement upon primary payers.

Consequently, Relators do not and cannot demonstrate that any alleged failure to

comply with Section 111 supports a false claim with respect to any State government

or that of Puerto Rico in connection with a Medicaid enrollee.  Notably, not one of

the "exemplars" offered by Relators is pled as involving a Medicaid enrollee, much

less a Medicaid enrollee in each of the individual states on whose behalf the suit is

brought.[40]

---

[39]    The Complaint contains no allegations that ISO reported anything to any state
government or violated any state or Puerto Rico statute.  *See*, *e.g.*, Compl.
¶ 568 (referring to "Primary Plans").

[40]    In addition, aspects of certain statutes provide additional bases for dismissal.
For example, the cited Ohio statute, O.R.C. § 2913.40, is a criminal statute
and Ohio's relevant civil statute, O.R.C. § 5164.35, does not permit *qui tam*
civil actions by private individuals.  The California, Florida, and Puerto Rico
statutes require an action to be brought in a specific *state* court.  *See* Cal. Gov't

Finally, if the federal FCA claims are dismissed—and, for the reasons set forth above, they should be—the Court should decline to exercise supplemental jurisdiction over Relators' claims under state and Puerto Rico law. *See*, *e.g.*, *U.S. v. Garman*, 719 F. App'x 459, 461 (6th Cir. 2017) ("Generally, if the federal claims are dismissed before trial the state claims should be dismissed as well."); *Rahimi*, 3 F.4th at 832.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted and the Complaint should be dismissed with prejudice.

---

Code § 12652(c)(2); Fla. Stat. Ann. § 68.083(3); 32 L.P.R.A. § 2934a(2)(b). Moreover, certain of the statutes have public disclosure bars similar to the FCA. *See* Puerto Rico False Claims Act No. 154-2018 § 4.04; Cal. Gov't Code § 12652(3)(A); Conn. Gen. Stat. Ann. § 4-4278(f); 740 Ill. Comp. Stat. Ann. 175/4(e)(4)(A); Tex. Hum. Res. Code § 36.113(a)–(b); N.Y. Fin. L. § 190; R.I. Gen. L. § 9-1.14-4. For the reasons discussed above, *see supra* Section IV, the claims asserted under these statutes are also barred by the prior public disclosures and must be dismissed. Finally, the dismissal of the federal FCA claim requires dismissal of the Michigan statutory claim. *See U.S. v. Wal-Mart Stores East, LP*, 858 F. App'x 876, 880 (6th Cir. 2021) ("FCA and MMFCA [the Michigan Medicaid False Claims Act statutes] are identical in every relevant respect here and are frequently analyzed in tandem.").

Dated:  December 15, 2021

Respectfully submitted,

*s/ Charles W. Browning*
Charles W. Browning (P32978)
**Plunkett Cooney**
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 594-6247
Fax: (248) 901-4040
cbrowning@plunkettcooney.com

Bryce L. Friedman
**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
bfriedman@stblaw.com

***Counsel for Travelers Defendants***

Michael Garvey
**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-7358
Fax: (212) 455-2502
mgarvey@stblaw.com

Thomas M. Schehr
**Dykema Gossett PLLC**
400 Renaissance Center, 37th Floor
Detroit, MI 48243
Tel: (313) 568-6659
Fax: (855) 255-1528
tschehr@dykema.com

***Counsel for Berkshire Hathaway Defendants***

Steven M. Levy
**Dentons US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
Fax: (312) 876-7934
steven.levy@dentons.com

John E. Benko
**McDonald Hopkins PLC**
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Tel: (248) 646-5070
Fax: (248) 646-5075
jbenko@mcdonaldhopkins.com

***Counsel for CSAA Defendants, Kemper Defendants, and Farmers Defendants***

Lori McAllister
**Dykema Gossett PLLC**
201 Townsend Street, Suite 900
Lansing, MI 48933
Tel: (517) 374 9150
Fax: (855) 258-3519
LMcAllister@dykema.com

*Counsel for Auto Owners Defendants
and Erie Defendants*

Bob E. Dapper, Jr.
Lyle Washowich
Taylor M. Davis
**Burns White LLC**
Burns White Center
48 26th Street
Pittsburgh, PA 15222
Tel: (412) 995-3000
Fax: (412) 995-3300
redapper@burnswhite.com
ldwashowich@burnswhite.com
tmdavis@burnswhite.com

*Counsel for Erie Defendants*

Laura A. Cellucci
Joseph L. Beavers
Thomas E. Zeno
Joshua F. Kahn
**Miles & Stockbridge, P.C.**
100 Light Street
Baltimore, MD 21202
Tel: (410) 727-6464
lcellucci@milesstockbridge.com
jbeavers@milesstockbridge.com
tzeno@milesstockbridge.com
jkahn@milesstockbridge.com

Robert C. Folland
**Barnes & Thornburg LLP**
41 S. High Street, Suite 3300
Columbus, OH 43215
Tel: (614) 628-0096
Fax: (614) 628-1433
Rob.Folland@btlaw.com

*Counsel for ISO*

Daniel T. Plunkett
Francis H. Brown
**McGlinchey Stafford PLLC**
601 Poydras Street, Ste 1200,
New Orleans, LA 70130
Tel: (504) 596-2778
Fax: (504) 910-9542
dplunkett@mcglinchey.com
fbrown@mcglinchey.com

*Counsel for USAA Defendants*

Suzanne Jaffe Bloom
Jeffrey J. Amato
**Winston & Strawn LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
sbloom@winston.com
jamato@winston.com

Fred K. Herrmann (P49519)
Kathleen A. Westfall (P78874)
**Kerr, Russell and Weber, PLC**
500 Woodward Avenue, Suite 2500

Joshua J. Chinsky (P80851)
**Butzel Long**
301 East Liberty, Suite 500
Ann Arbor, MI  48104
Tel: (734) 995-3110
Fax: (313) 225-7080
chinsky@butzel.com

*Counsel for GEICO Defendants*

Gregory L. Curtner (P12414)
Matthew Kennison (P79653)
**Riley Safer Holmes & Cancila LLP**
121 W. Washington, Suite 402
Ann Arbor, MI 48104
Tel: (734) 773-4910
Fax: (734) 773-4901
gcurtner@rshc-law.com
mkennison@rshc-law.com

Douglas W. Baruch
Jennifer M. Wollenberg
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
douglas.baruch@morganlewis.com
jennifer.wollenberg@morganlewis.com

*Counsel for State Farm Defendants*

Detroit, MI 48226-3427
Tel: (313) 961-0200
Fax: (313) 961-0388
fherrmann@kerr-russell.com
kwestfall@kerr-russell.com

*Counsel for National General Defendants*

Jason D. Popp
Andrew J. Liebler
**Alston & Bird LLP**
1201 W. Peachtree Street
Atlanta, GA 30309
Tel: (404) 881-4753
Fax: (404) 881-8753
jason.popp@alston.com
andrew.liebler@alston.com

Matthew J. Lavisky
**Butler Weihmuller Katz Craig LLP**
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
Tel: (813) 594-5656
mlavisky@butler.legal

John M. Sier (P39336)
Richard Joppich (P41709)
**Kitch Drutchas Wagner Valitutti & Sherbrook**
One Woodward Avenue, Suite 2400
Detroit, MI 48226
Tel: (313) 965-2915
john.sier@kitch.com
richard.joppich@kitch.com

*Counsel for Liberty Mutual Group Defendants*

David J. Farber
**King & Spaulding LLP**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
dfarber@kslaw.com

Jeffrey S. Cashdan
Zachary A. McEntyre
Emily S. Newton
Timothy H. Lee
**King & Spaulding LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
jcashdan@kslaw.com
zmcentyre@kslaw.com
enewton@kslaw.com
tlee@kslaw.com

Jordan S. Bolton (P66309)
**Clark Hill LLC**
151 S Old Woodward Ave., Ste. 200
Birmingham, MI 48009
Tel: (248) 988-1839
Fax: (248) 988-2320
JBolton@ClarkHill.com

***Counsel for Progressive Defendants and Auto Club Enterprises Defendants***

Aneca E. Lasley (0072366)
**Squire Patton Boggs (US) LLP**
2000 Huntington Center
41 South High Street
Columbus, OH  43215

Louis P. Gabel (P80365)
**Jones Day**
150 West Jefferson Ave., Suite 2100
Detroit, MI  48226-4438
Tel: (313) 733-3939
Fax: (313) 230-7997
lpgabel@jonesday.com

Matthew C. Corcoran (0078236)
**Jones Day**
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215-2673
Tel: (614) 469-3939
Fax: (614) 461-4198
mccorcoran@jonesday.com

Matthew A. Kairis (0055502)
**Jones Day**
2727 North Harwood Street
Dallas, TX  75201-1515
Tel: (214) 220-3939
Fax: (214) 969-5100
makairis@jonesday.com

***Counsel for Defendants Nationwide Mutual Insurance Company, Allied Insurance Company of America, Allied Property and Casualty Insurance Company, AMCO Insurance Company, Colonial County Mutual Insurance Company, Crestbrook Insurance Company, Depositors Insurance Company, Harleysville Insurance Company, Harleysville Insurance Company of New Jersey, Harleysville Insurance Company of New York, Harleysville Lake States Insurance Company, Harleysville Preferred Insurance Company, Harleysville***

Tel: (614) 365-2700
Fax: (614) 365-2499
aneca.lasley@squirepb.com

**Counsel for Defendants Freedom Specialty Insurance Company, National Casualty Company, Nationwide Affinity Insurance Company of America, Scottsdale Indemnity Company, Scottsdale Insurance Company, and Scottsdale Surplus Lines Insurance Company**

**Worcester Insurance Company, Nationwide Agribusiness Insurance Company, Nationwide Assurance Company, Nationwide General Insurance Company, Nationwide Insurance Company of America, Nationwide Insurance Company of Florida, Nationwide Lloyds, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, Titan Insurance Company, Victoria Fire & Casualty Company, and Victoria Select Insurance Company**

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on the 15th day of December 2021, I filed the foregoing document with the Clerk of the Court using the electronic court filing system, which will send notification of such filing to all Counsel of Record.

<u>*s/ Charles W. Browning*</u>
Charles W. Browning (P32978)

55

## Appendix 1

**Exemplar Defendants:**

1. GEICO Ind. Co.  *See* Appx. B at p. 156, ¶ 10.
2. Erie Ins. Exch.  *See* Appx. B at p. 162, ¶ 10.
3. Infinity Ins. Co.  *See* Appx. B at p. 165, ¶ 12.
4. Nationwide Mut. Ins. Co.  *See* Appx. B at p. 169, ¶ 10.
5. Travelers Ind. Co.  *See* Appx. B at p. 171, ¶ 9.

**Non-Exemplar Defendants:**

"Auto Club Enterprises Defendants"

1. Auto Club Cnty Mut. Ins. Co.
2. Auto Club Family Ins. Co.
3. Auto Club Ind. Co.
4. Automobile Club Interins Exch.
5. Interins Exch. of the Automobile Club
6. Motor Club Ins. Co.

"Auto Owners Defendants"

7. Auto-Owners Ins. Co.
8. California Capital Ins. Co.
9. Concord Gen. Mut. Ins. Co.
10. Eagle W. Ins. Co.
11. Green Mountain Ins. Co. Inc.
12. Home-Owners Ins. Co.
13. Monterey Ins. Co.
14. Nevada Capital Ins. Co.
15. Owners Ins. Co.
16. Property-Owners Ins. Co.
17. Southern-Owners Ins. Co.
18. State Mut. Ins. Co.
19. Sunapee Mut. Fire Ins. Co.
20. Vermont Accident Ins. Co. Inc.
21. Atlantic Casualty Insurance Company

"Berkshire Hathaway Defendants"

22. General Reinsurance Corp.
23. General Star Ind. Co.

24.   General Star Nat'l Ins. Co.
25.   Genesis Ins. Co.
26.   The Medical Protective Co.
27.   Medpro RRG Risk Retention Group
28.   MLMIC Ins. Co.
29.   Mount Vernon Fire Ins. Co.
30.   Mount Vernon Specialty Ins. Co.
31.   National Fire & Marine Ins. Co.
32.   National Ind. Co.
33.   National Ind. Co. of Mid-America
34.   National Ind. Co. of the South
35.   National Liab. & Fire Ins. Co.
36.   Norguard Ins. Co.
37.   Oak River Ins. Co.
38.   Old United Cas. Co.
39.   PLICO, Inc.
40.   Princeton Ins. Co.
41.   Radnor Specialty Ins. Co.
42.   Redwood Fire & Cas. Ins. Co.
43.   United States Liab. Ins. Co.
44.   U.S. Underwriters Ins. Co.
45.   Wellfleet Ins. Co.
46.   Wellfleet New York Ins. Co.
47.   Westguard Ins. Co.

"CSAA Defendants"

48.   CSAA Affinity Ins. Co.
49.   CSAA Fire & Cas. Ins. Co.
50.   CSAA Gen. Ins. Co.
51.   CSAA Ins. Exch.
52.   CSAA Mid-Atlantic Ins. Co. of NJ
53.   Mobilitas Gen. Ins. Co.

"Erie Defendants"

54.   Erie Ins. Co.
55.   Erie Ins. Co. of NY
56.   Erie Ins. Prop. & Cas. Co.
57.   Flagship City Ins. Co.

"Farmers Defendants"

    58.  21st Century Advantage Ins. Co.
    59.  21st Century Assur. Co.
    60.  21st Century Cas. Co.
    61.  21st Century Centennial Ins. Co.
    62.  21st Century Ind. Ins. Co.
    63.  21st Century Ins. Co.
    64.  21st Century N. Amer. Ins. Co.
    65.  21st Century Pacific Ins. Co.
    66.  21st Century Pinnacle Ins. Co.
    67.  21st Century Premier Ins. Co.
    68.  American Pacific Ins. Co. Inc.
    69.  Bristol W. Cas. Ins. Co.
    70.  Bristol W. Ins. Co.
    71.  Bristol W. Preferred Ins. Co.
    72.  Civic Prop. & Cas. Co.
    73.  Coast Nat'l Ins. Co.
    74.  Exact Prop. & Cas. Co. Inc.
    75.  Farmers Ins. Co. Inc.
    76.  Farmers Ins. Co. of AZ
    77.  Farmers Ins. Co. of ID
    78.  Farmers Ins. Co. of OR
    79.  Farmers Ins. Co. of WA
    80.  Farmers Ins. Exch.
    81.  Farmers Ins. Hi Inc.
    82.  Farmers Ins. of Columbus Inc.
    83.  Farmers New Century Ins. Co.
    84.  Farmers Specialty Ins. Co.
    85.  Farmers TX Cnty Mut. Ins. Co.
    86.  Fire Ins. Exch.
    87.  Foremost Cnty Mut. Ins. Co.
    88.  Foremost Ins. Co. Grand Rapids, Mi
    89.  Foremost Lloyds of TX
    90.  Foremost Prop. & Cas. Ins. Co.
    91.  Foremost Signature Ins. Co.
    92.  Illinois Farmers Ins. Co.
    93.  Mid Century Ins. Co.
    94.  Mid Century Ins. Co. of TX
    95.  Neighborhood Spirit Prop. & Cas. Co.
    96.  Security Nat'l Ins. Co.
    97.  Texas Farmers Ins. Co.
    98.  Truck Ins. Exch.

<u>"GEICO Defendants"</u>

    99.   Government Employees Ins. Co.
   100. GEICO Choice Ins. Co.
   101. GEICO Cnty Mut. Ins. Co.
   102. GEICO Gen. Ins. Co.
   103. GEICO Marine Ins. Co.
   104. GEICO Secure Ins. Co.

<u>"Insurance Services Office Defendant"</u>

   105. Insurance Services Office, Inc.

<u>"Kemper Defendants"</u>

   106. Alliance United Ins. Co.
   107. Alpha Prop. & Cas. Ins. Co.
   108. Capitol Cnty Mut. Fire Ins. Co.
   109. Charter Ind. Co.
   110. Financial Ind. Co.
   111. Infinity Assur. Ins. Co.
   112. Infinity Auto Ins. Co.
   113. Infinity Cas. Ins. Co.
   114. Infinity Cnty Mut. Ins. Co.
   115. Infinity Ind. Ins. Co.
   116. Infinity Preferred Ins. Co.
   117. Infinity Safeguard Ins. Co.
   118. Infinity Security Ins. Co.
   119. Infinity Select Ins. Co.
   120. Infinity Standard Ins. Co.
   121. Kemper Financial Ind. Co.
   122. Kemper Independence Ins. Co.
   123. Merastar Ins. Co.
   124. Mutual Savings Fire Ins. Co.
   125. Old Reliable Cas. Co.
   126. Response Ins. Co.
   127. Response Worldwide Direct Auto Ins. Co.
   128. Response Worldwide Ins. Co.
   129. Trinity Universal Ins. Co.
   130. Union Nat'l Fire Ins. Co.
   131. United Cas. Ins. Co. of Amer.
   132. Unitrin Advantage Ins. Co.

133. Unitrin Auto & Home Ins. Co.
134. Unitrin Cnty Mut. Ins. Co.
135. Unitrin Direct Ins. Co.
136. Unitrin Direct Prop. & Cas. Co.
137. Unitrin Preferred Ins. Co.
138. Unitrin Safeguard Ins. Co.
139. Valley Prop. & Cas. Ins. Co.
140. Warner Ins. Co.

"Liberty Mutual Group Defendants"

141. Liberty Surplus Ins. Corp.
142. LM Gen. Ins. Co.
143. LM Ins. Corp.
144. LM Prop. & Cas. Ins. Co.
145. Mid Amer. Fire & Cas. Co.
146. Midwestern Ind. Co.
147. Montgomery Mut. Ins. Co.
148. National Ins. Assn
149. Netherlands Ins. Co.
150. North Pacific Ins. Co.
151. Ohio Cas. Ins. Co.
152. Ohio Security Ins. Co.
153. Oregon Automobile Ins. Co.
154. Peerless Ind. Ins. Co.
155. Peerless Ins. Co.
156. Safeco Ins. Co. of Amer.
157. Safeco Ins. Co. of IL
158. Safeco Ins. Co. of IN
159. Safeco Ins. Co. of OR
160. Safeco Lloyds Ins. Co.
161. Safeco Nat'l Ins. Co.
162. Safeco Surplus Lines Ins. Co.
163. Wausau Business Ins. Co.
164. Wausau Gen. Ins. Co.
165. Wausau Underwriters Ins. Co.
166. West Amer. Ins. Co.

"National General Defendants"

167. Adirondack Ins. Exch.
168. Agent Alliance Ins. Co.
169. Century-Nat'l Ins. Co.

170. Direct Gen. Ins. Co.
171. Direct Gen. Ins. Co. of MS
172. Direct Ins. Co.
173. Direct Nat'l Ins. Co.
174. Imperial Fire & Cas. Ins. Co.
175. Integon Cas. Ins. Co.
176. Integon Gen. Ins. Corp.
177. Integon Ind. Corp.
178. Integon Nat'l Ins. Co.
179. Integon Preferred Ins. Co.
180. Mic Gen. Ins. Corp.
181. Mountain Valley Ind. Co.
182. National Farmers Union Prop. & Cas.
183. National Gen. Assur. Co.
184. National Gen. Ins. Co.
185. National Gen. Premier Ins. Co.
186. National General Ins. Online Inc.
187. New Jersey Skylands Ins. Assn
188. New South Ins. Co.
189. Standard Prop. & Cas. Ins. Co.

"Nationwide Defendants"

190. Allied Ins. Co. of Amer.
191. Allied Prop. & Cas. Ins. Co.
192. Amco Ins. Co.
193. Colonial Cnty Mut. Ins. Co.
194. Crestbrook Ins. Co.
195. Depositors Ins. Co.
196. Freedom Specialty Ins. Co.
197. Harleysville Ins. Co.
198. Harleysville Ins. Co. of NJ
199. Harleysville Ins. Co. of NY
200. Harleysville Lake States Ins. Co.
201. Harleysville Preferred Ins. Co.
202. Harleysville Worcester Ins. Co.
203. National Cas. Co.
204. Nationwide Affinity Co. of Amer.
205. Nationwide Agribusiness Ins. Co.
206. Nationwide Assur. Co.
207. Nationwide Gen. Ins. Co.
208. Nationwide Ins. Co. of Amer.
209. Nationwide Ins. Co. of FL

210. Nationwide Lloyds
211. Nationwide Mut. Fire Ins. Co.
212. Nationwide Prop. & Cas. Ins. Co.
213. Scottsdale Ind. Co.
214. Scottsdale Ins. Co.
215. Scottsdale Surplus Lines Ins. Co.
216. Titan Ins. Co.
217. Victoria Fire & Cas. Co.
218. Victoria Select Ins. Co.

"Progressive Defendants"

219. ASI Home Ins. Corp.
220. ASI Lloyds
221. ASI Preferred Ins. Corp.
222. ASI Select Auto Ins. Corp.
223. ASI Select Ins. Corp.
224. Blue Hill Specialty Ins. Co. Inc.
225. Drive NJ Ins. Co.
226. Mountain Laurel Assur. Co.
227. National Continental Ins. Co.
228. Progressive Advanced Ins. Co.
229. Progressive Amer. Ins. Co.
230. Progressive Bayside Ins. Co.
231. Progressive Cas. Ins. Co.
232. Progressive Classic Ins. Co.
233. Progressive Cnty Mut. Ins. Co.
234. Progressive Direct Ins. Co.
235. Progressive Express Ins. Co.
236. Progressive Garden State Ins. Co.
237. Progressive Gulf Ins. Co.
238. Progressive Hi Ins. Corp.
239. Progressive Marathon Ins. Co.
240. Progressive Max Ins. Co.
241. Progressive Mi Ins. Co.
242. Progressive Mountain Ins. Co.
243. Progressive Northern Ins. Co.
244. Progressive Northwestern Ins. Co.
245. Progressive Paloverde Ins. Co.
246. Progressive Preferred Ins. Co.
247. Progressive Premier Ins. Co. of IL
248. Progressive Prop. Ins. Co.
249. Progressive Security Ins. Co.

250. Progressive Select Ins. Co.
251. Progressive Southeastern Ins. Co.
252. Progressive Specialty Ins. Co.
253. Progressive Universal Ins. Co.
254. Progressive West Ins. Co.
255. United Financial Cas. Co.

"State Farm Defendants"

256. Dover Bay Specialty Ins. Co.
257. Hiroad Assur. Co.
258. State Farm Cnty Mut. Ins. Co. of TX
259. State Farm Fire & Cas. Co.
260. State Farm FL Ins. Co.
261. State Farm Gen. Ins. Co.
262. State Farm Guar. Ins. Co.
263. State Farm Ind. Co.
264. State Farm Lloyds
265. State Farm Mut. Auto Ins. Co.

"Travelers Defendants"

266. American Equity Ins. Co.
267. American Equity Specialty Ins. Co.
268. Automobile Ins. Co. of Hartford CT
269. Charter Oak Fire Ins. Co.
270. Discover Prop. & Cas. Ins. Co.
271. Discover Specialty Ins. Co.
272. Farmington Cas. Co.
273. Fidelity & Guar Ins. Co.
274. Fidelity & Guar Ins. Underwriters Inc.
275. First Floridian Auto & Home Ins. Co.
276. Gulf Underwriters Ins. Co.
277. Northfield Ins. Co.
278. Northland Cas. Co.
279. Northland Ins. Co.
280. Phoenix Ins. Co.
281. Select Ins. Co.
282. St. Paul Fire & Marine Ins. Co.
283. St. Paul Guardian Ins. Co.
284. St. Paul Mercury Ins. Co.
285. St. Paul Protective Ins. Co.
286. St. Paul Surplus Lines Ins. Co.

8

287. Standard Fire Ins. Co.
288. The Travelers Cas. Co.
289. Travco Ins. Co.
290. Travelers Cas. & Surety Co.
291. Travelers Cas. & Surety Co. of Amer.
292. Travelers Cas. Co. of CT
293. Travelers Cas. Ins. Co. of Amer.
294. Travelers Commercial Cas. Co.
295. Travelers Commercial Ins. Co.
296. Travelers Constitution State Ins. Co.
297. Travelers Excess & Surplus Lines Co.
298. Travelers Home & Marine Ins. Co.
299. Travelers Ind. Co. of Amer.
300. Travelers Ind. Co. of CT
301. Travelers Lloyds Ins. Co.
302. Travelers Lloyds of TX Ins. Co.
303. Travelers Personal Ins. Co.
304. Travelers Personal Security Ins. Co.
305. Travelers Prop. Cas. Co. of Amer.
306. Travelers Prop. Cas. Ins. Co.
307. United States Fidelity & Guar Co.

"USAA Defendants"

308. Garrison Prop. & Cas. Ins. Co.
309. United Serv Automobile Assn
310. USAA Cas. Ins. Co.
311. USAA Cnty Mut. Ins. Co.
312. USAA Gen. Ind. Co.

Open.06900.15407.27726252-1

9