UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
and the States of CALIFORNIA,
CONNECTICUT, FLORIDA,
ILLINOIS, MASSACHUSETTS,
MICHIGAN, NEW YORK, OHIO,
RHODE ISLAND, and TEXAS, and
the Government of PUERTO RICO,
*ex rel.* MSP WB, LLC, and *ex rel.*
MICHAEL ANGELO,

          Plaintiffs-Relators,

    v.

STATE FARM MUT. AUTO. INS.
CO., *et al.*

          Defendants.

No. 4:19-cv-12165-SDD-APP
Hon. Stephanie Dawkins Davis
Mag. Judge Anthony P. Patti

## **RELATORS' RESPONSE TO INSURANCE SERVICES OFFICE, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

## STATEMENT OF THE ISSUES PRESENTED

I. Whether Counts I and III of the First Amended Complaint lack allegations supporting a claim against ISO?

ANSWER: NO.

II. Whether the First Amended Complaint fails to allege a conspiracy claim between ISO and the remaining Defendants?

ANSWER: NO.

III. Whether the exemplars attached in Appendix B of the First Amended Complaint support a claim against ISO?

ANSWER: YES.

IV. Whether ISO terminating its contract with MSP for access to ISO's database, and subsequently revising the terms of its agreements to prevent future litigation, support a claim against ISO?

ANSWER: YES.

# **TABLE OF CONTENTS**

**CONTENTS**
TABLE OF AUTHORITIES ................................................................................. iv
INTRODUCTION .....................................................................................................1
ARGUMENT .............................................................................................................1
   I.   Counts I and III Sufficiently Plead Allegations Extending Liability to ISO ...1
      A.  Count I Adequately States a Claim Against ISO ..........................................2
      B.  Count III Sufficiently States a Claim Against ISO .......................................4
   II.  THE COMPLAINT ADEQUATELY ALLEGES A CONSPIRACY .............4
   III.  THE EXEMPLARS SUPPORT A CLAIM AGAINST ISO ........................8
   IV.  ISO'S CANCELLATION OF THE MSP CONTRACT CONSTITUTES AN OVERT ACT IN FURTHERANCE OF THE CONSPIRACY ....................10

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Columbia Nat. Res., Inc. v. Tatum*,……………………………………………2
  58 F.3d 1101, 1109 (6th Cir. 1995)
*Direct Sales Co. v. U.S.*,
  319 U.S. 703 (1943) .................................................................................. 8
*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) .................................................................. 9
*Hobson v. Wilson*,
  737 F.2d 1 (D.C. Cir. 1984) ...................................................................... 8
*Lenard v. Argento*,
  699 F.2d 874 (7th Cir. 1983)..................................................................... 8
*Smith & Nephew Inc. v. Federal Ins. Co.*,
  113 Fed. App'x. 99 (6th Cir. 2004) ........................................................... 9
*Smith v. U.S.*,
  287 F.2d 299 (5th Cir. 1961)..................................................................... 6
*Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*,
  2007 WL 1231560 (W.D. Ky. 2007) ........................................................ 9
*U.S. ex rel. Amin v. George Washington University*,
  26 F. Supp. 2d 162 (D.C. 1998).............................................................. 13
*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*,
  501 F.3d 493 (6th Cir. 2007).................................................................... 9
*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F.3d 188 (5th Cir. 2009).................................................................... 9
*U.S. ex rel. Hunt v. Merck–Medco Managed Care, L.L.C.*,
  336 F. Supp. 2d 430 (E.D. Pa. 2004) .................................................. 5, 6
*U.S. ex rel. Prather v. Brookdale Senior Living Communities, Inc.*,
  838 F.3d 750 (6th Cir. 2016).............................................................*passim*
*U.S. ex rel. SNAPP v. Ford Motor Co.*,
  532 F.3d 496 (6th Cir. 2008).................................................................. 12
*U.S. ex rel. Wilkins v. N. Am. Const. Corp.*,
  173 F. Supp. 2d 601 (S.D. Tex. 2001) ..................................................... 9
*U.S. v. Caremark, Inc.*,
  634 F.2d 808 (5th Cir. 2011)................................................................ 1, 5
*U.S. v. Stone*,
  323 F.Supp.2d 886 (E.D. Tenn. 2004) .................................................. 13
*U.S. ex rel. Tran v. Computer Sciences Corporation*,

53 F.Supp.3d 104 (D.C. Cir. 2014) ........................................................................ 13

Statutes

31 U.S.C. § 3729 ....................................................................................................... 7
31 U.S.C. § 3729(b)(1)(A) ...................................................................................... 11
31 U.S.C. § 3729(b)(1)(A)-(B) ............................................................................... 10

# INTRODUCTION

Insurance Services Office, Inc., ("ISO") demands dismissal of the First Amended Complaint ("FAC" or "Complaint") arguing, (1) Counts I and III do not apply to ISO; (2) the Complaint does not sufficiently allege a conspiracy; (3) the exemplars do not support a claim against ISO; and (4) its termination of a contract for access to ISO's database does not support a claim against ISO. (ECF 335) ("Motion"). Each argument, unsupported by any legal standard, fails.[1]

# ARGUMENT

## I. COUNTS I AND III SUFFICIENTLY PLEAD ALLEGATIONS EXTENDING LIABILITY TO ISO

ISO is liable for an indirect reverse false claim under the False Claims Act, 31 U.S.C. § 3729 ("FCA"). Multiple courts have interpreted the FCA to include liability for indirect reverse false claims. *See U.S. v. Caremark, Inc.*, 634 F.2d 808, 815 (5th Cir. 2011); *U.S. ex rel. Hunt v. Merck–Medco Managed Care, L.L.C.*, 336 F. Supp. 2d 430, 444–45 (E.D. Pa. 2004). Indeed, "Congress's intent was to expand the FCA to reach further to protect the Government from fraud due to false filings." *Caremark*, 634 F.3d at 816. An indirect reverse false claim occurs when "a defendant allegedly knowingly made a false statement to a third party, knowing that its statement would 'conceal, avoid, or decrease' an obligation to the Government." *Id*.

---

[1] Relators incorporate and adopt Relators' Response to Defendants' Omnibus Motion to Dismiss the First Amended Complaint ("Opposition").

1

The Complaint alleged that, upon learning that MSP's litigation against the Primary Plan insurance defendants (the "Primary Payers") was aided by ISO's data, ISO terminated its contract with MSP. FAC ¶¶ 7, 496–97. ISO was on notice that the Defendants' failure to collect insured's complete and accurate personal data would result in inaccurate Section 111 reports. FAC ¶¶ 494, 495–98. And, despite being on notice, ISO turned a blind eye to the reporting deficiencies and aided the Primary Payers in their scheme to conceal and avoid their obligations to repay the Government. FAC ¶¶ 498, 559–65.

These allegations (and all factual allegations contained in the 206-paged Complaint) must be taken as true, in light most favorable to Relators, and all inferences must be construed in Relators' favor. *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citations omitted).

### A.   Count I Adequately States a Claim Against ISO

ISO argues that the term "Defendant," as used in the Complaint, does not include ISO. ISO's flawed reasoning is that "Defendant" applies only to entities that have a direct obligation to the Government, Medicare Advantage Organizations ("MAOs") or insureds, and excludes ISO. ECF No. 335, PageID.1965. ISO cites no caselaw in support of this notion (it can't) because the law is, in fact, quite to the contrary: the FCA "applies even where there is no direct liability running from the Government to the claimant." *Smith v. U.S.*, 287 F.2d 299 (5th Cir. 1961).

2

In *Hunt*, the Court rejected a similar "direct privity argument" holding, the "statute allowed liability if the party caused a false statement to be made or used." 336 F. Supp. 2d at 444. *Caremark* held that "even if Caremark did not owe an 'obligation' to the Government, its false statements caused the state Medicaid agencies to make false statements to the Government, which is itself a violation of [31 U.S.C. § 3729[(a)(1)(G)]." 634 F.3d at 815. An indirect reverse false claim is actionable where the offending party has no direct relationship with the Government, because the FCA "does not require that the statement impair the ***defendant's*** obligation; instead, it requires that the statement impair 'an obligation to pay or transmit money or property to the government.'" *Id*. at 817 (emphasis added).

MAOs are obligated to provide accurate and regular risk-adjustment reports based on claims they pay. Not only is this information critical when submitting their annual bid, it is also material to MAOs' obligation to reimburse CMS when their actual expenses for the year fall below the expected amount. Further, CMS is required to and does use these risk-adjustment reports to offset the cost borne by MAOs, through monthly rebates, when their expenses exceed the expected amount. As in *Caremark*, Defendants here are additionally liable for indirectly defrauding the Government by causing MAOs to submit false records.

3

### B. Count III Sufficiently States a Claim Against ISO

Again, ISO relies on mere semantics, to argue that Count III pertains only to the Primary Payers and not ISO. But Count III begins by incorporating by reference all the allegations contained in paragraphs 1 through 543. FAC ¶ 566. Those 543 paragraphs detail numerous instances of ISO's contribution to the Defendants' vast scheme to defraud the Government, including ISO's cancellation of MSP's contract to prevent MSP's use of ISO data in litigation against the Primary Payers. FAC ¶ 496. The Complaint further alleges ISO's efforts to occlude evidence of Defendants' failure to accurately report—or to report at all—under Section 111, all to evade their obligations to reimburse the Government. FAC ¶¶ 498–99.

Finally, ISO asserts that the Complaint fails to allege a violation of state law. Again, this is simply not the case. Relators attached to the Complaint numerous state-specific exemplars, explicitly referencing information reported to ISO. FAC, Appendix B. The exemplars establish numerous instances in which Defendants defrauded the Government. Perpetrated on a state and federal level, the scheme violated both state and federal law.

## II. THE COMPLAINT ADEQUATELY ALLEGES A CONSPIRACY

ISO contends that Relators must demonstrate an express agreement to prove the existence of a conspiracy. But an "express agreement is not necessary to prove civil conspiracy." *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984); *Lenard v.*

4

*Argento*, 699 F.2d 874, 882 (7th Cir. 1983). "Tacit understanding, created and executed over time, is enough to constitute an agreement even absent personal communication." *Direct Sales Co. v. U.S.*, 319 U.S. 703, 714 (1943). "In a civil conspiracy, the acts of one co-conspirator are attributable to another, and each co-conspirator is liable for the acts of another." *Smith & Nephew Inc. v. Federal Ins. Co.*, 113 Fed. App'x. 99, 103 (6th Cir. 2004); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 2007 WL 1231560, at *3 (W.D. Ky. Apr. 24, 2007), *aff'd*, 598 F.3d 257 (6th Cir. 2010). This is precisely the sort of conspiracy alleged in the Complaint, and each conspirator—including ISO—is liable for the acts committed by any member of the conspiracy.

Furthermore, ISO gravely misconstrues the particularity standard. The particularity requirement or "time, place, contents, and identity standard is not a straitjacket for Rule 9(b)." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 188, 190 (5th Cir. 2009). The rule is "context specific and flexible and must remain so to achieve the remedial purpose of the FCA." *Id.*; *see also*, *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, at 504 (6th Cir. 2007) (applying a "relaxed standard" under Rule 9(b)); *Chesbrough. v VPA, P.C.*, F.3d 461 (6th Cir. 2011). "[E]very circuit that has applied a heightened pleading standard, has retreated from such a requirement in cases in which other detailed factual allegations support a strong inference." *U.S. ex rel. Prather v. Brookdale Senior Living Communities, Inc.*,

5

838 F.3d 750, 769 (6th Cir. 2016). "Courts have to infer an agreement from indirect evidence in most civil conspiracy cases" *Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983); *U.S. ex rel. Wilkins v. N. Am. Const. Corp.*, 173 F. Supp. 2d 601, 641 (S.D. Tex. 2001) (finding circumstantial evidence sufficient to support an FCA conspiracy claim). Hence, the particularity standard only requires Relators to allege factual allegations that support an inference from circumstantial evidence that a conspiracy exists. Here, Relators more than meet the particularity standard.

ISO, an expert in the industry, claims not only to be ignorant of any wrongdoing by the other Defendants, but also that it *could not* possibly have known of the epidemic misreporting.[2] But ISO provides reporting for most of the insurance industry, meaning their database is essentially a private industry Section 111 clearinghouse. FAC ¶ 491. With the assistance of ISO, the other Defendants engaged in a concerted scheme to prevent Medicare and Medicaid from being reimbursed, by agreeing to hide information Defendants are required to divulge to effectuate proper, mandatory Medicare and Medicaid reimbursement. FAC ¶ 563.

---

[2] "Knowingly" is defined to include a person who has "actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information; and require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(A)-(B); *Prather*, 892 F.3d at 837 (6th Cir. 2018).

6

In fact, according to ISO's own software description publicly available online[3], ISO admits that it knows that, *in order to determine Medicare beneficiary status for Section 111 Reporting*, it *needs* the SSN of the individual claimants. This, coupled with the fact that Defendants admittedly do not collect SSN of its insureds and claimants certainly permits the inference of an unlawful conspiracy in violation of the FCA. *Direct Sales Co.*, 319 U.S. at 714. Additionally, ISO even goes so far as to market its services to its clients (i.e. Defendants Primary Payers) as a way "to avoid unintended exposure on the conditional payment side."[4]

Here, the Complaint expressly alleges that Relators uncovered the Defendants' rampant fraud by identifying countless instances where Defendants reported a claim to ISO, then failed to report the claim to CMS. FAC ¶ 494. Relators also alleged thousands of instances in which false or inaccurate data was reported

---

[3] *See ISO Claims Partners Section 111 iComply Accelerator for ClaimCenter 10,* Dec. 15, 2021 App Description available at:
https://marketplace.guidewire.com/s/product/iso-claims-partners-section-111-icomply-accelerator-for-claimcenter-10/01t3n00000Gffd4AAB
(last visited February 15, 2022)
*See ISO Claims Partners Section 111 iComply Accelerator for ClaimCenter 10,* Dec. 23, 2021 App Description available at:
https://marketplace.guidewire.com/sfc/servlet.shepherd/version/renditionDownload?rendition=ORIGINAL_pdf&versionId=0683n00000D6o4IAAR
(last visited February 15, 2022).
[4] *Product Navigator, Guidewire.com*, Page 4, available at:
https://marketplace.guidewire.com/sfc/servlet.shepherd/version/renditionDownload?rendition=ORIGINAL_pdf&versionId=0683n00000D6o4IAAR
(last visited February 15, 2022).

7

and alleged that when ISO learned that Relators were on to the scheme, ISO immediately terminated its contract with MSP, then restructured an exclusionary agreement to prevent litigation against ISO's clients (the other Defendants). FAC ¶¶ 498, 511. Yet, ISO would have this Court believe that it wasn't aware, and that it is purely coincidental, that 316 insurers—all of which either utilize ISO as a private reporting entity or maintain other contractual relationships with ISO—inaccurately reported false information in thousands of instances under Section 111 with very lucrative results. Relators' allegations support a strong inference that ISO, in conjunction with the other Defendants, conspired to defraud the government.

### III. THE EXEMPLARS SUPPORT A CLAIM AGAINST ISO

The exemplars provided by Relators sufficiently show specific instances in which Defendants neglected their Section 111 reporting obligations. Still, ISO argues that Relators failed to allege any instance in which ISO knowingly made false statements or was aware of the other Defendants' obligation to report.

The FCA's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The "reckless disregard" language extends liability to a defendant who "buried [their] head in the sand." *Prather,* 838 F.3d at 837. "[K]nowledge, and other conditions of a person's

8

mind may be alleged generally [and need not] be pled with particularity." *U.S. ex rel. SNAPP v. Ford Motor Co.*, 532 F.3d 496, 505 (6th Cir. 2008).

Here, Defendants were fully aware of their reporting obligations and knew that their systems and methodology were inadequate. ISO purports to specialize in satisfying Section 111 reporting requirements and is likely the largest private reporting database for the insurance industry. FAC ¶ 3. Furthermore, ISO's business relationship with the other Defendants dates back years, if not decades. As a leading expert in the industry, ISO is undeniably capable of differentiating between an incomplete/inaccurate report and a complete/accurate one. The information in the exemplars includes, but is not limited to, the insured's Primary Plan, the date of the accident, crash report records, resulting injuries, billed medical expenses, failure to fulfill Section 111 obligations, and whether the information was reported to ISO. FAC, Appendix B.

ISO's defense amounts to struthious ignorance. The exemplars sufficiently demonstrate instances of Defendants' failure to fulfill their Section 111 reporting obligations. Not only was ISO well aware of this failure, but it actively contributed to the ongoing scheme to defraud the government.

## IV. ISO'S CANCELLATION OF THE MSP CONTRACT CONSTITUTES AN OVERT ACT IN FURTHERANCE OF THE CONSPIRACY

An overt act is "an act to effect the object of the conspiracy." *U.S. v. Stone*, 323 F.Supp.2d 886, 889 (E.D. Tenn. 2004). In *U.S. ex rel. Amin v. George Washington Univ.*, the court stated "a single overt act by one of the conspirators can support a conspiracy claim." 26 F. Supp. 2d 162, 165 (D.C. 1998).

Relators adequately alleged that upon learning of the MSP Act based litigation, ISO terminated its contract with MSP to protect Defendants from exposure of their failure to accurately report under Section 111 and evade their obligations to the Government. FAC ¶¶ 495–99. In *U.S. ex rel. Tran v. Computer Sciences Corp.*, the court concluded that "an agreement to restructure business relationships so as to facilitate false representations to the government fits comfortably within the category of compacts that qualify as agreements to submit false claims for the purpose of an FCA conspiracy allegation." 53 F. Supp. 3d 104, 134 (D.C. Cir. 2014). Similarly here, ISO restructured its business relationships to prevent use of ISO subscriptions as a means to pursue litigation. Accordingly, ISO's conduct was an overt act in furtherance of the conspiracy.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Relators' Response to Defendants' Omnibus Motion to Dismiss, Relators respectfully request the Court deny Defendants' motions.

        Respectfully submitted,

        AKEEL & VALENTINE, PLC

By: /s/: Shereef H. Akeel
      Shereef H. Akeel (P54345)
      Adam S. Akeel (P81328)
      Sam Simkins (P81210)
      AKEEL & VALENTINE, PLC
      888 West Big Beaver Road, Suite 420
      Troy, MI 48084
      Shereef@akeelvalentine.com
      Adam@akeelvalentine.com
      Sam@akeelvalentine.com

      John H. Ruiz (Fla. Bar No.: 928150)
      Robert Strongarone (Fla. Bar No.:118931)
      John W. Cleary (FL Bar No. 118137)
      MSP RECOVERY LAW FIRM
      2701 S. LeJeune Rd., 10th Floor
      Coral Gables, FL 33134
      jruiz@msprecoverylawfirm.com
      rstrongarone@msprecoverylawfirm.com
      jcleary@msprecoverylawfirm.com

      ***Attorneys for Plaintiffs-Relators***

Dated: February 15, 2022

## CERTIFICATE OF SERVICE

I hereby certify that, on February 15, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

s/ Adam S. Akeel