# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America et al ex rel.
MSP WB, LLC and Michael Angelo*,*

      Plaintiffs,

v.

State Farm Mutual Automobile Insurance
Company, et al.,

      Defendants.

_____/

Case No. 19-12165

Hon. Denise Page Hood

## ORDER GRANTING DEFENDANTS' OMNIBUS MOTION TO DISMISS [ECF No. 338], DENYING AMENDED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [ECF No. 426], MOOTING ALL REMAINING MOTIONS [ECF Nos. 329, 330, 331, 332, 333, 334, 335, 340, 341, 396,[1] 470, 473, 475, 478, 484], and DISMISSING CAUSE OF ACTION

## I.   INTRODUCTION

*Qui tam* plaintiff relators MSP WB, LLC ("MSP WB") and Michael Angelo ("Mr. Angelo") (collectively, the "Relators") are pursuing the present action, purportedly on behalf of the United States of America and the states of Michigan,

---

[1]MSP WB's Motion to Strike or Disregard New Arguments (ECF No. 396) is denied for the following reasons: (a) the Court regularly granted Relators leave to file supplemental briefs or sur-replies, *see, e.g.,* ECF No. 450; and (b) although Defendants should have raised some issues in their motions rather than their replies (as MSP WB argues), the Court finds that Relators were not prejudiced because Relators fully addressed the issues in other pleadings, including ECF No. 396, all of which the Court reviewed and considered before rendering this Order.

California, Connecticut, Florida, Illinois, Massachusetts, New York, Rhode Island and Texas, as well as the government of Puerto Rico.  MSP WB was formed in January 2021, 18 months after Mr. Angelo filed the initial Complaint and six months before joining with Mr. Angelo as a relator for purposes of the Amended Complaint.

The initial 63-page Complaint was filed by Mr. Angelo solely against State Farm Mutual Automobile Insurance Company ("State Farm") in July 2019, purportedly on behalf of the United States of America and the State of Michigan.  In March 2021, the United States of America and the State of Michigan declined to intervene in this action. *See* ECF No. 17.

In June 2021, the Relators, this time purportedly on behalf of the United States of America and the states of California, Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, Rhode Island, and Texas, as well as the government of Puerto Rico (collectively, the "State Plaintiffs"), filed a three-count 206-page First Amended Complaint ("Amended Complaint"). ECF No. 20.  The Amended Complaint was filed against 316 alleged no-fault automobile insurers (the "Insurer Defendants") and Insurance Services Office, Inc. ("ISO") (collectively, "Defendants").

In the Amended Complaint, Relators allege that Defendants have engaged in a scheme to defraud federal healthcare programs (Medicare Parts A, B, C, and D),

as well as state healthcare (Medicaid) programs): (a) based upon the systematic failure to completely or accurately satisfy "Section 111" reporting requirements as primary payors; and (b) by failing to reimburse billions of dollars in Medicare secondary payments.  The Amended Complaint contains three counts: (1) Reverse False Claims Act ("FCA") violations, arising out of 31 U.S.C § 3729(a)(1)(G) (Count I); (2) conspiracy to violate the FCA, in violation of 31 U.S.C. § 3729(a)(1)(C) (Count II); and (3) violation of various State False Claims Acts (California, Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, Rhode Island, Texas, and the government of Puerto Rico).  In August 2021, the United States of America and every State Plaintiff declined to intervene in this action. *See* ECF No. 22.

On December 15, 2021, Defendants filed an Omnibus Motion to Dismiss (the "Motion"), ECF No. 338, as well as numerous supplemental motions to dismiss. *See* ECF Nos. 329, 330, 331, 332, 333, 334, 335, 340, 341.  The Motion and the supplemental motion to dismiss were fully briefed, and a hearing was held on December 7, 2022. Defendants also filed a Motion to Take Judicial Notice of Exhibits 1–47 in support of the Omnibus Motion to Dismiss, ECF No. 339, which has been fully briefed.  Relators have filed a Motion to Supplement the Record, ECF No. 379, a Motion to Strike, ECF No. 396, and two Motions to File a Sur-Reply,

ECF Nos. 397, 398.  All of those motions are fully briefed, and the Court previously granted ECF Nos. 379, 397, and 398. ECF No. 450.

Finally, on December 22, 2022, more than two weeks after the December 7, 2022 hearing regarding the motions to dismiss, Relator MSP WB (but not Mr. Angelo) filed an Amended Motion for Leave to File Second Amended Complaint ("Amended Motion for Leave"). ECF No. 426. Defendants filed a collective response, and State Farm also filed a response. MSP WB filed a reply to each of the responses. After the Court ordered Plaintiffs to submit clarification as to the scope of their proposed amendments to the First Amended Complaint, MSP WB and Mr. Angelo filed a response to that order. ECF No. 446. After the Amended Motion for Leave was briefed, the parties filed a number of other motions, including those docketed at ECF Nos. 470, 473, 475, 478, and 484.

For the reasons set forth herein, (1) the Omnibus Motion to Dismiss (ECF No. 338) is granted; (2) the supplemental motions to dismiss (ECF Nos. 329, 330, 331, 332, 333, 334, 335, 340, 341) are deemed moot; (3) the Motion for Judicial Notice (ECF No. 339) is granted; (4) the Amended Motion for Leave (ECF No. 426) is denied; (5) Motion to Strike or Disregard New Arguments (ECF No. 396) is denied; (6) all remaining motions (ECF Nos. 470, 473, 475, 478, 484) are deemed moot; and (7) this cause of action is dismissed with prejudice.

## II.     BACKGROUND

The FCA imposes civil liability on those who defraud the United States Government. *See* 31 U.S.C. §§ 3729–3733.  The Amended Complaint advances a reverse false claim theory, which requires showing that a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). The FCA also imposes liability on any person that conspires to violate Section 3729(a)(1)(G). *See* 31 U.S.C. § 3729(a)(1)(C). To promote enforcement of the FCA, a private person (called a relator) can bring a *qui tam* action on behalf of the United States if the relator meets certain statutory criteria. *See* 31 U.S.C. § 3730(b)(1).

"Traditional" Medicare allows citizens over age 65 or with a disability to obtain medical benefits through the Centers for Medicare & Medicaid Services ("CMS"). Medicare includes Part A (hospital services, skilled nursing facilities, and home health services), 42 U.S.C. §§ 1395c–1395i-6; Part B (physician services, some preventative services, ambulance services, and durable medical equipment), *id*. at §§ 1395j–1395w-6; and Part D (prescription drug coverage, administered by private entities), *id*. at §§ 1395w-101–1395w-154. Enacted in 1997, Medicare

Advantage (Part C) allows enrollees to obtain Medicare benefits through Medicare Advantage Organizations ("MAOs"). *Id*. at §§ 1395w-21–1395w-28. The federal government pays an MAO such as ISO a fixed rate in exchange for the MAO's administration of Medicare benefits for Part C enrollees. *Id*. at §1395w-23(a)(1)(A). The Medicare Secondary Payer Act ("MSP Act") makes Medicare the secondary, rather than primary, payer when private sources (such as no-fault or liability insurance or a litigation recovery) are legally responsible to cover the costs of a Medicare beneficiary's medical claims. *See* 42 U.S.C. § 1395y(b)(2)(A); *Care Choices HMO v. Engstrom*, 330 F.3d 786, 789 (6th Cir. 2003).

In 2007, Congress enacted so-called "reporting requirements" (referred to as Section 111 reporting requirements) that became effective in 2011. 42 U.S.C. § 1395y(b)(7)-(8). Pursuant to the Section 111 reporting requirements, insurers are required to report quarterly to Medicare the identity of claimants (including any claimant "whose claim is unresolved") who are seeking coverage for medical expenses and are determined by the insurer to be Medicare beneficiaries. *Id*. § 1395y(b)(8). These quarterly reports to Medicare also must include certain accident-related information about these claimants, "including an individual whose claim is unresolved," "*regardless of whether or not there is a determination or admission of liability*." 42 U.S.C. § 1395y(b)(8)(A)–(C) (emphasis supplied).

6

### III.   APPLICABLE LAW

#### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### B. Rule 9(b)

A properly pled fraud claim requires that the plaintiff: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008). The

threshold test is "whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant . . . to answer, addressing in an informed way the [plaintiff's] claim of fraud." *Coffey v. Foamex, LP*, 2 F.3d 157, 162 (6th Cir. 1993). Rule 9(b) should not be "decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice." *U.S. ex rel. SNAPP v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008). *See also U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 411 (6th Cir. 2016) ("[P]roviding the defendant with sufficient information to respond is Rule 9's overarching purpose.").

As the Sixth Circuit has stated:

> **In complying with Rule 9(b), a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud**." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993) (internal quotation marks and citations omitted); *see also United States ex rel. Branhan v. Mercy Health Sys. of Southwest Ohio,* No. 98–3127, 1999 WL 618018, at * 1 (6th Cir. Aug.5, 1999) (affirming dismissal of a complaint alleging improper billing in violation of the FCA because it "failed to allege a single specific incident in which improper billing occurred and the plaintiff never set forth the dates, times, or the names of individuals who engaged in the alleged improper billing"). Essentially, the amended complaint should provide fair notice to Defendants and enable them to "prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999) (citing *Michaels Bldg. Co.,* 848 F.2d at 679).

*United States ex rel. Bledsoe v. Community Health System*s, 342 F.3d 634, 643 (6th Cir.2003) ("*Bledsoe I*") (emphasis added).   In Relators' words, the Amended Complaint must "adequately allege[] the requisite 'who, what, when, where, and how' of Defendants' fraud. *See* ECF No. 376, PageID.3921 (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co*., 683 F.3d 239, 256 (6th Cir. 2012)).

## IV.   OMNIBUS MOTION TO DISMISS

Relators contend that the Amended Complaint alleges three related, independently cognizable, reverse FCA violations based upon Defendants' knowing submission of materially false and inaccurate Section 111 reports that improperly concealed Defendants' obligations to pay the Government. First, by allegedly failing to properly report Defendants' noncompliance, Defendants incurred a $1,000 per claim, per day, penalty. 42 U.S.C. § 1395y(b)(8)(E). This penalty constituted "an obligation to pay or transmit money to the government." 31 U.S.C. § 3729(a)(1)(G). Second, Defendants' allegedly false reports concealed their obligations to reimburse the Government for secondary payments. Third, as a result of their alleged reporting failures, Defendants caused other entities, namely MAOs and medical providers, to unknowingly submit false records material to their obligations to pay the Government—thereby concealing, avoiding, and decreasing these obligations.

Relators claim that they have alleged that the Insurer Defendants conspired and acted together with ISO to create and maintain a system Defendants knew and intended would be insufficient to gather data needed to fulfill their Section 111 reporting obligations.  Relators assert that this unlawful conspiracy and voluntary disablement began no later than 2010 and has continued until the present.

### A. Reverse False Claims Act Violations

In order to succeed on an FCA reverse false claim theory, a plaintiff must show that the defendant knowingly made a "false record or statement material to an obligation to pay or transmit money or property to the Government," or "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decreas[ed] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

On October 13, 2021, the Sixth Circuit concluded that Rule 9(b) governs FCA claims:

> The question presented is whether [relator]'s allegations satisfied Rule 9(b). That rule requires a plaintiff "to state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "We review *de novo* a district court's dismissal of a complaint for failure to plead with particularity under Rule 9(b)." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011).

> All of [relator]'s claims under the False Claims Act (and the Indiana statute) rest on the premise that the defendants knowingly submitted or caused to be submitted "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A); Ind. Code § 5-11-5.7-2(a)(1). The quoted language "attaches liability, not to the

underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 411 (6th Cir. 2016) (cleaned up). For that reason, **our circuit has imposed a "clear and unequivocal requirement that a relator allege specific false claims when pleading a violation of" the Act**. *Id.* (cleaned up). Thus, **under Rule 9(b), "[t]he identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation**." *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) (cleaned up). **Rule 9(b) therefore "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply that claims requesting illegal payments must have been submitted.**" *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (cleaned up).

\* \* \* \* \*

But [relator] makes little effort in her complaint to "identify any specific claims" that Care Connection submitted pursuant to the scheme. *Sanderson*, 447 F.3d at 877. [Relator] could have done that in one of two ways. **The default rule is that a False Claims Act claimant must identify a "representative claim that was actually submitted to the government for payment**." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 915 (6th Cir. 2017). [Relator] did not do that here. **Alternatively, a claimant "can otherwise allege facts—based on personal knowledge of billing practices— supporting a strong inference that *particular identified claims* were submitted to the government for payment**." *Prather*, 838 F.3d at 771 (emphasis added).

Here, [Relator] did allege "personal knowledge of billing practices" employed in the fraudulent scheme—namely, her knowledge of the OASIS codes that she says Fazzi fraudulently changed. *Id.*; Am. Compl. ¶ 70. But [relator] did not allege facts that identify any specific fraudulent claims.

*United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 196–97 (6th Cir. 2021), *cert. denied sub nom. U.S. ex rel. Owsley v. Fazzi Assocs., Inc.*, No. 21-936, 2022 WL 9552617 (U.S. Oct. 17, 2022) (**bold** and underlined emphasis added by the Court; *italicized* emphasis in the original).

The *Owsley* court's holding undercuts a number of Relators' contentions. Relators' reliance on a relaxed pleading standard, *see* ECF No. 376, PageID.3927-30, is misplaced in this case, as is Relators' reliance on *U.S. ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750 (6th Cir. 2016), and *Chesbrough v. VPA, P.C.*, 655 F.3d 461 (6th Cir. 2011). In *Prather*, the relator worked in the billing department of defendant contractor and had personal observations and communications. For that reason, her "detailed knowledge of the billing and treatment documentation . . . combined with her specific allegations regarding [the company's] requests for anticipated payment" to the government satisfied the pleading threshold. *Prather*, 838 F.3d at 769-70. *See also Ibanez* 874 F.3d at 916 ("In order for the *Prather* exception to apply, it is not enough to allege personal knowledge of an allegedly fraudulent scheme; a relator must allege adequate personal knowledge of billing practices themselves."); *U.S. v. ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 459 (6th Cir. 2018)

("*Prather*, even while it established an exception for some billing employees, expressly recognized that everyone else must plead false claims with particularity.").

Relators have made no allegations that either Relator has personalized knowledge of any Defendant's billing practices. Relators therefore "must identify a 'representative claim that was actually submitted to the government for payment.'" *Owsley*, 16 F.4th at 196 (citing *Ibanez*, 874 F.3d at 915). As discussed below, Relators have failed to do that with respect to any of the Insurer Defendants.

In *Chesbrough*, there was only one defendant, and the court held only that a "relator does not need to identify every false claim submitted for payment," so long as relator "identif[ies] with specificity characteristic examples that are illustrative of the class of all claims covered by the [defendant's] fraudulent scheme." *Id.* at 470. Contrary to the reading of *Chesbrough* that Relators' desire, *Chesbrough* does not provide that a relator need not identify <u>any</u> false claim made by a defendant in order to plead a viable FCA claim. Rather, *Chesbrough* provides only that a relator need not identify <u>every</u> false claim a defendant submits <u>if</u> a specific claim identified by a relator represents all of the claims submitted by defendant in furtherance of its fraudulent scheme.

The fact that Relators listed thousands of claims in the Amended Complaint is not, in itself, sufficient to plead a prima facie case for false statements pursuant to

the FCA. *See* ECF No. 20, PageID.455 (¶ 511).  Such claims do not satisfy Rule 9(b), in part because the claims are set forth by "Group" and do not ascribe the claim(s) to a particular Defendant.

### 1. Non-Exemplar Insurer Defendants

Defendants first contend that the Amended Complaint must be dismissed with respect to all Insurer Defendants who were never identified in connection with any "exemplar" in the Amended Complaint ("Non-Exemplar Insurer Defendants") or the appendices attached to the Amended Complaint (specifically, Appendix B). Relators have alleged one or more exemplars (*i.e.,* representative claim(s)) attributable to only five of the Insurer Defendants, and no exemplar has been identified with respect to any of the 311 Non-Exemplar Insurer Defendants.

Relators contend that Defendants' complex and far-reaching fraudulent scheme was adequately alleged by the several representative claims pleaded in the Amended Complaint and Appendix B. Relators contend that the scope of Defendants' scheme and fraud is so great that Relators need not identify an exemplar for each Insurer Defendant.  Relators rely on *U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (*Bledsoe II*), where the court stated, in part, "where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the

government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme." *Id.; see also Chesbrough*, 655 F.3d at 470 (quotes omitted) (A plaintiff need only "identify with specificity characteristic examples that are illustrative of the class of all claims covered by the fraudulent scheme.").

The Court finds that *Owsley*, *Bledsoe II* or *Chesbrough* do not support Relators' contention that they did not have to identify a claim made by each Defendant that was submitted to the Government for payment. The Court notes that Relators also do not identify any other applicable authority for that proposition, as it is contrary to the holding of *Bledsoe II*, in which the court stated:

> The critical question then becomes how broadly or narrowly a court should construe the concept of a fraudulent scheme. **If a court were to construe a fraudulent scheme at a high level of generality—for example, if the court concluded that the fraudulent scheme consisted of "the defendant hospital submitting false claims to Medicare or Medicaid"—then the court would, in effect, violate the principle that improperly pled allegations of fraud do not become adequate merely by placing them in the same complaint with allegations that are sufficient under Rule 9(b). Allowing such a complaint to go forward *in toto* would fail to provide defendants with the protections that Rule 9(b) was intended to afford them: Defendants would not have notice of the specific conduct with which they were charged, they would be exposed to fishing expeditions and strike suits, and they would not be protected from "spurious charges of immoral and fraudulent behavior."** *Sanderson,* 447 F.3d at 877 (citing *Clausen,* 290 F.3d at 1310); *see Banca Cremi, S.A.,* 132 F.3d at 1036 n. 25 (discussing policies furthered by Rule 9(b)). On the other hand, were a court to construe the concept of a fraudulent scheme in an excessively narrow

fashion, the policies promoted by the rule allowing a relator to plead examples, rather than every false claim, would be undermined.

We conclude that the concept of a false or fraudulent scheme should be construed as narrowly as is necessary to protect the policies promoted by Rule 9(b). Specifically, **we hold that the examples that a relator provides will support more generalized allegations of fraud only to the extent that the relator's examples are *representative samples* of the broader class of claims**. *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 557 (8th Cir.2006) ("Clearly, neither this court nor Rule 9(b) requires [a relator] to allege specific details of *every* alleged fraudulent claim forming the basis of [the relator's] complaint. However, … **[relator] must provide *some* representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors**."), *cert. denied* 549 U.S. 881, 127 S.Ct. 189, 166 L.Ed.2d 142 (2006); *Peterson v. Cmty. Gen. Hosp.,* No. 01 C 50356, 2003 WL 262515, at \*2 (N.D.Ill.2003) (unpublished) ("To be clear, the court does not expect relator to list every single patient, claim, or document involved, but **he must provide at least some representative examples**."); *United States ex rel. Schuhardt v. Wash. Univ.,* 228 F.Supp.2d 1018, 1034–35 (D.Mo.2002) ("[A] relator 'must provide some representative samples of the fraud which detail the specifics of who, where and when.'" (quoting *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,* 1997 U.S. Dist. LEXIS 21402 at \*33 (D.Minn. Mar. 3, 1997) (unpublished))). In order for a relator to proceed to discovery on a fraudulent scheme, the claims that are pled with specificity must be "characteristic example[s]" that are "illustrative of [the] class" of all claims covered by the fraudulent scheme. Webster's Third New International Dictionary of the English Language Unabridged, 1926 (1993) ("representative" definition 4). **The examples of false claims pled with specificity should, in all material respects, including general time frame, substantive content, and relation to the allegedly fraudulent scheme, be such that a materially similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of all claims.[] With this condition satisfied, the defendant will, in all likelihood, be able to infer with reasonable accuracy the precise**

16

**claims at issue by examining the relator's representative samples**, thereby striking an appropriate balance between affording the defendant the protections that Rule 9(b) was intended to provide and allowing relators to pursue complex and far-reaching fraudulent schemes without being subjected to onerous pleading requirements.

*Bledsoe II*, 501 F.3d at 510-11 (footnote omitted) (*italicized* emphasis in original; underlined and **bolded** emphasis added by the Court).

Relators also cite a Tennessee district court decision to support their contention that they need not identify in their Amended Complaint every false claim at issue. *See United State ex rel. Goodman v. Arriva Med., LLC*, No. 3:13-CV-0760, 2020 WL 1433861 (M.D. Tenn. Mar. 24, 2020).  The *Goodman* court stated:

Generally speaking, a plaintiff seeking to comply with Rule 9(b) must "allege the time, place, and content of the alleged misrepresentation" at issue. *Bledsoe*, 501 F.3d at 504 (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)). **When the plaintiff alleges a wide-ranging scheme involving numerous systematic misrepresentations**, however—for example, where the Government alleges that a healthcare provider was submitting or causing to be submitted thousands of claims that were all false for the same reason—**then that requirement is relaxed to require the plaintiff to plead "representative" examples, not every single false claim at issue**. *Marlar*, 525 F.3d at 445 (quoting *Bledsoe*, 501 F.3d at 510). The Government met this requirement, including with regard to Albin and Grapevine, by providing examples of particular claims tainted by the kickback scheme that Arriva/Alere engaged in but Albin and Grapevine worked to put in place. (Docket Nos. 121 ¶ 335 & 121-1.) **The prohibition on group pleading under Rule 9(b) prevents a plaintiff from simply lumping multiple defendants together without explaining each defendant's culpable role. Once the defendants' respective actions are set forth, however, there is**

17

> **nothing inherently wrong with using the same set of examples to support the allegations against each defendant**.

*Id.* at *7 (emphasis added).

Although the *Goodman* court does support the proposition that a relator need not necessarily plead every single false claim at issue, the Court concludes that *Goodman* does not support Relators' argument that it has adequately pleaded exemplars that support a reverse false claim act action against the Non-Exemplar Defendants.  Relators not only do not plead a representative example with respect to the Non-Exemplar Insurer Defendants – against which Relators have not offered a single exemplar -- Relators also fail to allege or explain each such Non-Exemplar Insurer Defendant's "culpable role."  Instead, Relators simply lump together a bunch of Defendants in a textbook example of group pleading.  Although Relators claim that the exemplars "directly implicat[e]" 210 of the Insurer Defendants (based on corporate relationships) and "the Complaint afforded all 316 [Insurer Defendants] notice of exactly what they did that was unlawful," ECF No. 376, PageID.3927, these are nothing more than conclusory statements.

Relators also suggest that Defendants have engaged in a "wheel conspiracy-type" scheme. *See U.S. v. Swafford*, 512 F.3d 833, 842 (6th Cir. 2008) (discussing a "'wheel conspiracy' (or 'hug-and-spoke' conspiracy)—wherein the defendant served as the hub connected to each of the customers via a spoke . . . .").  Relators

cite ISO's decision to revise its contracts and terminate its agreement with MSP Recovery (an affiliate of MSP WB) to support an inference of an agreement between ISO and each of the other Defendants.

Relators argue that several cases support the proposition that alleging several defendants committed the same fraud and had the same role is permissible, particularly in a wheel-type conspiracy. Citing *MSP Recovery Claims v. Auto Club Ins. Ass'n*, 2021 WL 5234501 (E.D. Mich. 2021); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012); *U.S. ex rel. Lynch v. Univ. of Cincinnati Med. Ctr., LLC*, 2020 WL 1322790, at *30 n.19 (S.D. Ohio 2020); and *U.S. ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677–78 (9th Cir. 2018) (in a "wheel-conspiracy" type of fraud, where several defendants independently performed "parallel actions," group pleading recognized as acceptable). Only in *Silingo*, however, were there more than 3 defendants. Here, there are 311 Non-Exemplar Insurer Defendants for whom Relators fail to describe the fraudulent activity undertaken.

Relators also cite *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 126–27 (D.C. Cir. 2015), but that case involved an entity and 19 of its subsidiaries with respect to an alleged fraud and its concealment arising from a centralized and nationwide corporate policy (holding that "precise details of individual claims are

19

not, as a categorical rule, an indispensable requirement of a viable False Claims Act complaint, especially not when the relator alleges that the defendant knowingly caused a third party to submit a false claim as part of a federal regulatory program."). In the instant action, there are no allegations of a policy or agreement to which all Insurer Defendants adhered, nor even a specific policy that any group of Insurer Defendants with a single corporate affiliation (*e.g.,* the State Farm entities) followed, such that it could be said that all Insurer Defendants had the same role in the purported scheme. Accordingly, the Court finds that Relators have not satisfied Rule 9(b) via the "'wheel conspiracy'-type" fraud and generally contending that Non-Exemplar Defendants "committed the same fraud" as the Exemplar Defendants. *U.S. ex rel. O'Laughlin v. Radiation Therapy Servs.*, 497 F.Supp.3d 224, 241 (E.D. Ky. 2020).

For the reasons set forth above, the Court finds that Relators do not identify any claim(s) submitted by any of the 311 Non-Exemplar Insurer Defendants, nor any "characteristic example" of an FCA violation by any of the Non-Exemplar Insurer Defendants. The Court concludes that Relators' false statement claim fails as to each of the 311 Non-Exemplar Defendants. *See Bledsoe II*, 501 F.3d at 512 (dismissing multi-defendant FCA case relying on group pleading). The Court grants the Omnibus Motion to Dismiss with respect to the Non-Exemplar Defendants.

2. *Exemplar Defendants*

Defendants next argue that, with respect to the five Insurer Defendants referenced in the "exemplars" (the "Exemplar Insurer Defendants"), Relators fail to plead the elements of an FCA violation with the requisite particularity. Defendants maintain that Relators do not allege that the Exemplar Insurer Defendants had an "obligation to pay or transmit money" to "the Government."

Defendants first assert that the Exemplar Insurer Defendants' obligations cited by Relators were owed to an MAO (a private party), not "the Government," so they are not within the scope of the FCA. Defendants also argue that Relators fail to identify: (1) any false statement(s) or conduct by an Exemplar Insurer Defendant that concealed or improperly avoided an obligation to reimburse medical expenses; nor (2) the "knowing" scienter required as to any such conduct. Defendants maintain that the exemplars upon which Relators rely (one in the Complaint and nine in Appendix B thereto) fail to sufficiently allege that the Exemplar Insurer Defendants knowingly submitted "false" Section 111 reports to avoid reimbursement obligations.

Defendants argue that the exemplars cited by Relators are inconsistent with the alleged scheme to submit inaccurate Section 111 reports to Medicare. Defendants further state that none of the exemplars indicates how an Exemplar

Insurer Defendant submitted an inaccurate Section 111 report. Defendants contend that the exemplars actually demonstrate that the applicable Exemplar Insurer Defendant accurately reported the relevant accident-related information to ISO. ECF No. 20, PageID.486-503. Defendants also assert that none of the exemplars reflects an obligation of an Exemplar Insurer Defendant to reimburse any government, as is required for a reverse false claim, because the Exemplar Insurer Defendants do not pay the government. Defendants suggest that, at best, the exemplars identify allegedly unreimbursed expenses incurred by an MAO, a private organization not covered by the FCA.

Relators contend that improper reporting or failure to report demonstrates an obligation to pay and constitutes a false record. ECF 372, PageID.3470-71, 3474-75. But, the Court notes, reporting requirements arise whenever an insurance company becomes aware that an injured person may be a Medicare beneficiary and an insurance policy may cover those injuries "regardless of whether or not there is a determination or admission of liability." 42 U.S.C. § 1395y(b)(8)(C). The reporting insurer often is not ultimately responsible for the particular Medicare beneficiary's medical expenses (*e.g.*, the medical expenses at issue were not related to the accident). Accordingly, the mere fact that an insurance company makes a report does not support an "obligation" by the reporting insurance company to pay money. *See*

*MSP Recovery Claims, LLC v. Metro. Gen. Ins. Co.*, No. 20cv24052, 2021 WL 804716 at *2 (S.D. Fla. Mar. 3, 2021), *app. filed*; *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *6 (S.D.N.Y. Mar. 26, 2021).

The Court is not persuaded, as Relators contend, that mere errors or omissions in Section 111 reporting constitute violations of the FCA because the prevailing authority holds otherwise. *See, e.g., U.S. ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, No. CV07-297-SEJL, 2008 WL 2857372, at *11 (D. Idaho July 23, 2008), *aff'd*, 398 Fed. App'x 233 (9th Cir. 2010); *United States ex rel. Hendrickson v. Bank of Am.*, N.A., 343 F. Supp. 3d 610, 635 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019).

As the court held in *Mason*, to "sufficiently plead a violation of the FCA, Relators must allege facts showing that State Farm said the false statements to Relators in order to avoid repaying Medicare and that this was done knowingly." *Mason*, 2008 WL 2857372, at *5.  The *Mason* court dismissed the relator's FCA claim where the complaint failed to allege facts that insurance company <u>knew</u> of its duty to reimburse Medicare. *Id.* at *7 ("Knowledge that Mason is a Medicare beneficiary and that State Farm might be liable for Mason's surgery, does not equate to knowledge that Medicare paid for a specific surgery.").

As Defendants argue, the alleged exemplars in Appendix B are simply unreimbursed payments for medical care covered by a private MAO, which is not subject to the reverse false claims provision of the FCA. The Court finds that, if Congress desired to impose liability under the FCA for avoiding an obligation for a federal contractor such as a health insurer MAO, Congress would have done so; the fact that Congress imposed such liability in the provisions governing direct false claims evidences that. *Compare* 31 U.S.C. §3729(a)(1)(A) and §3729(b)(2)(A)(ii) (defining "claim") with § 3729(a)(1)(G) and § 3729(b)(3) (defining "obligation"); \*Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (where "Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

The Court also concludes that none of the exemplars stems from an occasion where a Defendant <u>had an obligation</u> under the Medicare statute to reimburse the private MAO for the specific medical expenses described.  An "obligation" under the FCA refers to an <u>established</u> duty "to pay the Government funds" that existed "at the time that the alleged improper conduct under the FCA occurred." *Petras*, 857 F.3d at 505–06. *See also Ibanez*, 874 F.3d at 917 (affirming dismissal of a reverse false claim when "relators provide no facts showing defendants were under an

affirmative obligation to the government at the time the alleged false statements were made"). Having reviewed the Amended Complaint, the Court finds that Relators do not identify an existing obligation, nor one owed to the Government by the MAOs or anyone else, at the time of the alleged improper conduct.

Relators next claim that the same fraudulent scheme used to defraud MAOs—which administer Parts C and D of the Medicare program—was used in the same way and at the same time to defraud Medicare Parts A and B directly. Relators allege that Defendants funnel all Medicare beneficiaries through the same process by intentionally failing to collect necessary data and misreporting their responsibilities under Section 111, thus avoiding and concealing their obligations to reimburse MAOs and CMS alike. *See Shea*, 863 F.3d at 934 (D.C. Cir. 2017) (adopting relator's theory that "if (a) Verizon overbilled its commercial customers for certain surcharges and taxes, and (b) Verizon used the same billing practices for the government, then (c) Verizon must have billed the illegal surcharges and taxes in its government contracts").

Relators further claim that Defendants caused MAOs to retain funds owed to the Government. They argue that when Primary Payers (Defendants) avoid their responsibility, it causes MAOs to bear the cost, and a portion of this fraudulent and illegal cost-shifting is then ultimately borne by CMS in four related ways: (1) mid-

year risk-adjustment reports; (2) year-end reconciliations; (3) Medical Loss Ratio ("MLR") remittance payments; and (4) subsequent bid calculations. Relators insist that this unlawful cost-shifting is actionable because the FCA "does not require that the statement impair the defendant's obligation; instead, it requires that the statement impair 'an obligation to pay or transmit money or property to the government.'" *U.S. v. Caremark, Inc.*, 634 F.3d 808, 817 (5th Cir. 2011). The Court disagrees.

The Court finds that Relators fail to plead that any Defendant knowingly or recklessly made a false statement to the Government or avoided a reimbursement obligation to the Government. Relators rely on the testimony of the employee(s) of only one of the 317 Defendants (as well as some deposition testimony from employees of non-parties), but that testimony is from another case. ECF No. 376, PageID.3939. That testimony only shows that someone's Medicare eligibility status could have been determined earlier, not that any Defendant submitted false data or codes to CMS.

As Relators state, the FCA's scienter requirement includes "actual knowledge of the information," plus "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). "Allegations that [defendants] were deliberately ignorant or reckless with respect to the truth or falsity of their submissions are sufficient to

plead a claim." *Sutter Health*, 444 F. Supp. 3d at 1083 (scienter established where defendant was alleged (1) to have been on notice of a potential overpayment and (2) to have made no good-faith effort to investigate and to report and return any funds).

For the reasons stated, the Court concludes that Relators have failed to sufficiently allege that scienter with respect to any of the Defendants, including the Exemplar Insurer Defendants (and ISO, if applicable). Accordingly, the Court grants the Omnibus Motion to Dismiss with respect to the claims in Count I against the Exemplar Insurer Defendants.

### 3.    All Defendants

The Court also finds that the public disclosure doctrine bars Relators' FCA claims against all Defendants. To guard against "parasitic lawsuits" and "opportunistic plaintiffs," the FCA's "public disclosure bar" mandates dismissal of FCA claims that echo publicly disclosed information. *U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 522 (6th Cir. 2020). Under this "wide-reaching" bar, *U.S. ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 851 (6th Cir. 2020), courts must "dismiss an action or claim under [the FCA] . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" through one of three so-called "channels:" (1) in a "Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;" (2) "in a

congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation;" or (3) "from the news media," unless "the person bringing the action is an original source," 31 U.S.C. § 3730(e)(4)(A) (emphasis added).[2] An original source is a person who either (i) prior to a public disclosure, voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based or (ii) has knowledge that is independent of and materially adds to the publicly disclosed allegations. 31 U.S.C. § 3730(e)(4)(B).

Defendants argue that Relators' allegations are substantially the same allegations made in prior failed lawsuits brought by or on behalf of the United States and publicly disclosed in the news media, including by Relators' counsel, prior to the filing of the Amended Complaint. Defendants assert that Relators' general contention that the insurance industry is not fully reimbursing "conditional payments" of Medicare beneficiaries' accident-related expenses is a carbon copy of the same unfounded allegations made in the public domain long before the Complaint and Amended Complaint were filed.

---

[2] "[H]earing" "encompasses more than formal or evidentiary hearings and includes court filings generally" in federal actions in which the Government or its agent was a party. U.S. ex rel. Am. Sys. Consulting, Inc. v. Man Tech Advanced Sys. Int'l Inc., 2012 WL 12929898, at *5 (S.D. Ohio 2012) (considering "hearing" in public disclosure bar pre-amendment).

Defendants contend that articulating a handful of new supposed "exemplars" of the same alleged conduct is not enough to avoid the public disclosure bar, as Relators did not voluntarily disclose any of this information to the Government before it was public and do not have knowledge that is independent of and materially adds to the publicly disclosed allegations. Defendants contend that, where, as here, a relator's FCA claims "feed off" of alleged conduct previously disclosed, the claims are barred.

The Court agrees that most, if not all, of Relators' allegations are substantially the same as allegations previously made by one or both Relators, their affiliated entities, or other persons, as reflected in the 47 exhibits filed by Defendants at ECF No. 339. For the following reasons, the Court grants the Motion for Judicial Notice filed by Defendants at ECF No. 339. Although such exhibits typically would not be allowed for purposes of a motion to dismiss, courts have recognized that it is permissible to admit them for purposes of determining whether the public disclosure bar applies. *See, e.g., U.S. ex rel. Rahimi v. Rite Aid Corp.*, 2019 WL 10374285, at *2 (E.D. Mich. Dec. 12, 2019) ("To determine whether the public disclosure bar applies here, the Court will take judicial notice of the . . . news articles attached to Defendant's motion to dismiss and for judgment on the pleadings and attached to Defendant's reply brief.").

Defendants seek, and the Court takes, judicial notice of the <u>existence</u> of the news articles at Exhibits 1-34 and "what they say," which is "not subject to reasonable dispute." *Davidson v. Warden, Warren Corr. Inst.*, 2021 WL 1964487, at *2 (S.D. Ohio May 17, 2021) (citation omitted).  The Court does not, however take judicial notice of "the truth of the matter[s] asserted" in the 47 exhibits. ECF No. 375, PageID.3660. *See also Mich. State A. Philip Randolph Inst. v. Johnson*, 2016 WL 4267828, at *4 (E.D. Mich. Aug. 15, 2016) (holding that it was not improper to take judicial notice of national news articles because "the accuracy of the national sources cited by the Court, such as the Wall Street Journal and the Washington Post, cannot reasonably be disputed. Particularly since they merely recounted events that have taken place in the public light"); *Silbersher v. Valeant Pharms. Int'l, Inc.*, 445 F. Supp. 3d 393, 398, 399 & n.2 (N.D. Cal. 2020) (taking judicial notice of Law360 article and finding that it "meets the standards for admissibility set forth in Federal Rule of Evidence 201(b)").

The Court also takes judicial notice of Exhibits 35–46 (ECF Nos. 339-35 through 339-46) because the exhibits consist of documents filed or published on governmental websites: complaints, notices of complaints, dockets and other court filings, as well as information contained on the Delaware Department of State's website, all of which routinely are the subject of judicial notice. *See, e.g., U.S. ex*

*rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 844 (6th Cir. 2020) (taking judicial notice of a complaint to determine whether the public disclosure bar warranted dismissal of FCA claim); *U.S. v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) ("Judicial records are a source of 'reasonably indisputable accuracy' . . . ."); *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 636 (E.D. Mich. 2014) (taking judicial notice of state of Michigan records regarding a company's incorporation).

To the extent Relators claim judicial notice should not be granted because some of the exhibits are confidential or otherwise not wholly accessible to the public, that argument fails. The Sixth Circuit has rejected the argument that a confidential court filing is not a public record. *See Hancock v. Miller*, 852 F. App'x 914, 920 (6th Cir. 2021).

The Court also takes judicial notice of Exhibit 47 (ECF No. 339-47) because it is a summary of the case name, court and docket number, date the complaints were filed, and status of 144 lawsuits initiated by affiliates of MSP WB. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1191 n.1 (M.D. Tenn. 2017) (taking judicial notice of plaintiff's commencement of other lawsuits and citing *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014)).  The Court finds that: (1) the fact of and status of the litigations listed are subject to judicial notice, and (2) the lawsuits summarized in Exhibit 47 show that Relator MSP and

31

its affiliates have filed similar or identical allegations in federal courts prior to the instant suit.

Accordingly, the Court grants Defendants' motion to take judicial notice of Exhibits 1-47 and concludes that Relators FCA claims are barred by the public disclosure doctrine.

### B. Count II – Conspiracy Claim

Relators claim that all of the Insurer Defendants conspired with ISO to violate the FCA. A civil conspiracy, including one under 31 U.S.C. § 3729(a)(1)(c), "consists of 'an agreement between two or more persons to injure another by unlawful action.'" *U.S. ex rel. O'Laughlin v. Radiation Therapy Servs.*, 497 F. Supp. 3d 224, 241 (E.D. Ky. 2020) (quoting *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991)). What "must be shown is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *O'Laughlin*, 497 F. Supp. 3d at 241 (quoting *Murphy*, 937 F.2d at 1039).[3]

---

[3] Although the essence of conspiracy is agreement, an "[e]xpress agreement is not necessary to prove civil conspiracy." *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). "Tacit understanding, created and executed over time, is enough to constitute an agreement even absent personal communication." *Direct Sales Co. v. United States*, 319 U.S. 703, 714 (1943). "Each conspirator need not have known

In their conspiracy claim, Relators have alleged that the underlying cause of action against Defendants was the violation of the FCA. As the Court has held that Relators have no viable reverse FCA claim(s) against the Defendants, Relators' civil conspiracy claim must be dismissed for that reason alone. *See, e.g., Detroit Will Breathe v. City of Detroit*, 524 F.Supp.3d 704, 710-11 (E.D. Mich. Mar. 10, 2021) (citations omitted); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1474, 171 Cal. Rptr. 3d 548, 566 (2014), as modified (May 27, 2014) (citations and quotation marks omitted) ("Civil conspiracy requires an agreement to participate in an unlawful activity and an overt act that causes injury, so it does not set forth an independent cause of action' but rather is 'sustainable only after an underlying tort claim has been established.").

Relators' FCA civil conspiracy claim also is subject to dismissal for failure to allege all of the requisite elements. Under the FCA, a defendant is subject to liability for conspiring to violate any subparagraph of §3729(a)(1). *O'Laughlin*, 497 F. Supp. 3d at 241. Relators argue that the Amended Complaint expressly alleged that

all of the details of the illegal plan or all of the participants involved." *Weberg*, 505 F.2d at 526. "In a civil conspiracy, the acts of one co-conspirator are attributable to another, and each co-conspirator is liable for the acts of another." *Smith & Nephew Inc. v. Federal Ins. Co.*, 113 F. App'x. 99, 103 (6th Cir. 2004); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 2007 WL 1231560, at *3 (W.D. Ky. Apr. 24, 2007), aff'd, 598 F.3d 257 (6th Cir. 2010).

33

Defendants conspired to avoid reporting their primary payer responsibility to CMS in order to conceal, avoid, and decrease their obligations to pay the government, all in violation of the FCA. Citing ECF No. 20, at ¶ 470 ("The Defendants and/or their subsidiaries, agents, and employees knowingly conspired to avoid reporting primary payer responsibility to CMS and MA plans for the purpose of decreasing or avoiding obligations to pay the government in violation of the FCA.") and *generally* Count I, Count II.

The Court finds, however, that the Amended Complaint is devoid of any allegations that support the existence of any agreement between and among the Insurer Defendants and ISO.  At most, Relators have pleaded that each Insurer Defendant has contracted with ISO to conduct Section 111 reporting. There are no particularized allegations of how any Defendant agreed with any other Defendant to defraud the Government, in violation of the FCA, as Rule 9(b) requires. *See U.S. ex rel. Dennis v. Health Mgmt. Assocs.*, 2013 WL 146048, at *17 (M.D. Tenn. Jan. 14, 2013) ("Under Rule 9(b), general allegations of a conspiracy, without supporting facts to show when, where or how the alleged conspiracy occurred, amount to only a legal conclusion and are insufficient to state a cause of action.").

The Court is not persuaded by Relators' argument that the Amended Complaint contains circumstantial evidence of an agreement between Defendants

"to avoid reporting their primary payer responsibility [and status] to CMS." ECF No. 376, PageID.3941-42. Although an FCA "conspiracy may be established by circumstantial evidence and may be based on inference," *Wysong Corp. v. M.I. Ind.*, 412 F. Supp. 2d 612, 632 (E.D. Mich. 2005); *U.S. ex rel. Wilkins v. N. Am. Const. Corp.*, 173 F. Supp. 2d 601, 641 (S.D. Tex. 2001) (circumstantial evidence held sufficient to support an FCA conspiracy claim), none of the paragraphs in the Amended Paragraph cited by the Relators provides any particularity regarding such an agreement. The conclusory allegations that Defendants failed to properly report certainly does not demonstrate the existence of an agreement amongst all of the Defendants to do so. Nor do the alleged "overt acts" by a given Insurer Defendant when it "improperly reported" its primary payer status to CMS, *see* ECF 376, PageID.3942,[4] support the existence of an agreement by and among all (or any) of the Defendants.

---

[4] The Court cannot agree with Relators' argument that Section 111 reports are exclusively within the control of Defendants.  To the contrary, Relators have alleged that: (1) they (or related entities) have accessed Defendants' claims information through a contract with ISO, ECF No. 20, PageID.451 (at ¶ 492); and (2) CMS provides this information to MAOs, which relators can access. *See, e.g., U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (rejecting a claim that Section 111 reports are solely within the control of insurance companies (an argument set forth by Relators) and finding that the relator had "avenues for obtaining information" in an FCA case).  Although *Clausen* is not binding on this Court, the Court concludes that the reasoning of the *Clausen* court should be applied in this case.

Relators also rely on ISO's decision to revise its contracts and terminate its agreement with MSP Recovery (which it was permitted to do) to support an inference of an agreement between ISO and the Insurer Defendants. However, Relators do not plead any action by any Insurer Defendant *vis a vis* ISO that would support any finding that ISO acted in any way other than unilaterally when electing not to conduct business with MSP Recovery. For that reason, ISO's termination of its agreement with MSP Recovery does not support the existence of an industry-wide conspiracy to defraud the Government. *See, e.g., O'Laughlin*, 497 F. Supp. 3d at 241.

Relators make repeated references to a "wheel conspiracy-type" scheme, but as discussed above, this argument is doomed by the absence of factual allegations to support it. *See U.S. v. Swafford*, 512 F.3d 833, 842 (6th Cir. 2008) (finding a "'wheel conspiracy' (or 'hub-and-spoke' conspiracy)—wherein the defendant served as the hub connected to each of the customers via a spoke . . . — fails because no common goal or enterprise existed"). The Court finds that Relators again fail to offer anything other than conclusory allegations of a common goal or enterprise.

For all of the reasons set forth in this Section IV.B., the Court grants the Omnibus Motion to Dismiss with respect to Count II.

## C. Count III – State Actions

In a single count of the Complaint, Relators assert claims under the false claims/Medicaid fraud statutes of California, Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, Rhode Island, Texas, and Puerto Rico. *See* ECF No. 20, at ¶¶ 567–610.  As the Court has concluded that both Counts I and II are to be dismissed, the Court could simply decline to exercise supplemental jurisdiction and dismiss the state law claims in Count III, without prejudice.

In this case, however, the Court believes the interests of justice and judicial economy support: (a) consideration of the state law claims as alleged; and (b) dismissing the claims in Count III. The allegations in Count III of the Amended Complaint are classic conclusory allegations with respect to the State Plaintiffs. as Relators have, in essence, simply regurgitated the language of state and Puerto Rico false claims statutes. Relators' claims in Count III are predicated on their conclusory statement with respect to each state that, "[t]hrough the acts described above, the Primary Plans knowingly caused to be presented to [the applicable State/Puerto Rico] records or statements to conceal, avoid or decrease their obligation to reimburse Medicaid." *See* ECF No. 20, at ¶ 568, 572, 576, 580, 584, 588, 592, 596, 600, 604, 608.

Relators do not identify any conduct by any Defendant with respect to these 11 "claims" within Count III (including identifying any exemplar that might be

connected to any such claim(s)). Relators allege only that "the Primary Plans have knowingly submitted indirect reverse false claims the [applicable State/Puerto Rico] Program." *Id.* at ¶¶ 569, 573, 577, 581, 585, 589, 593, 597, 601, 605, 609.

Even if Relators are correct that a less stringent standard than that required by Rule 9(b) applies (it does not, as discussed above), Relators must still plead, with particularity, facts that meet the elements required under the Puerto Rico and State statutes. *See U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2021 WL 4502275, at *5-6 (N.D. Tex. Oct. 1, 2021) (dismissing certain state claims because even under a "somewhat lower Rule 9(b) standard," the complaint lacked "reliable indicia" to find a "strong inference [Defendants] submitted false claims" in 21 states).

The Court finds, and Relators have not offered any allegations to the contrary, that Relators do not link the basis of their lawsuit—that Insurer Defendants knowingly chose not to comply with Section 111 requirements—with any false claim submitted to the Government, let alone to any Medicaid agency of a State or Puerto Rico. The Amended Complaint also does not identify any purported false claim or statement made to any of the States or Puerto Rico; in fact, Relators do not identify <u>any</u> conduct with respect to certain of the States. For these reasons, the Court dismisses the non-federal claims in Count III. *See, e.g., U.S. v. Garman*, 719 F.

App'x 459, 465 (6th Cir. 2017) (finding dismissal of state claims warranted where federal claims are dismissed).

Accordingly, the Court grants the Omnibus Motion to Dismiss with respect to Count III.

## V.   MOTION FOR LEAVE TO AMEND

In the words of Relators, "[t]he factors for determining whether to permit an amendment include 'the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" ECF No. 426, PageID.6417 (quoting *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001)).  As discussed below, there has been no lack of notice to Defendants that Relators would seek to file a second amended complaint. The Court finds, however, that: (a) Relators unreasonably delayed filing the second amended complaint; (b) Relators exercised bad faith when: (i) repeatedly failing to file the Amended Motion for Leave when they indicated they would, (ii) taking so long to file it, and (iii) filing it after the motions to dismiss had been fully briefed <u>and</u> argued; (c) granting the Amended Motion for Leave would unduly prejudice Defendants; and (d) most significantly, the proposed amendments would be futile.

### A. Untimeliness

On December 15, 2021, Defendants filed their initial omnibus motion to dismiss the Amended Complaint (as well as nine supplemental motions to dismiss the Amended Complaint).  In a January 27, 2022 email to Defendants' counsel, Relators' counsel stated that Relators intended to seek leave to file a second amended complaint. ECF No. 434-1, PageID.7040. Defendants' counsel requested that Relators "[p]lease forward your proposed [Second] Amended Complaint." *Id.* at PageID. 7039-40. On February 1, 2022, Relators' counsel represented to Defendants, "Before we seek leave, we will be providing a copy of our proposed second amended complaint for your review in the near future" and asked for a 10-day extension to file their response. *Id.* at PageID.7037.

On February 15, 2022, without having ever provided any of the Defendants with a proposed second amended complaint, Relators filed responses to all 10 motions to dismiss.  Defendants then filed replies. Several motions for leave to file supplemental briefs were filed, including at least three by Relators (ECF Nos. 379, 397, 398), and the Court granted those motions. *See* ECF No. 450.  In some of their filings, Relators suggested that they might file for leave to file a second amended complaint. *See, e.g.,* ECF No. 371, PageID.3369-70. no such proposed amendment was filed prior to the hearing the Court held on the motions to dismiss on December 7, 2022.

At the December 7, 2022 hearing, the Court asked Relators' counsel, "Have you offered an amended complaint that you filed, a further amended complaint, and so I can determine why, if you amended it, it would not be futile or something like that?" ECF No. 423, PageID.5368. Relators' counsel replied that "we have not proffered an amended complaint" and that he did not believe Relators were required to do so. *Id.* He proposed that "[i]t cannot be the law that every time a defendant files a motion to dismiss, a Plaintiff must strike its tent [sic] and withdraw its complaint and proffer an amended complaint. . . . But if the Court is not satisfied that, yes, we should be given the right to file a second amended complaint." *Id.* Relators did not, however, represent that they would file a second amended complaint, even when the Court raised the issue. Approximately two weeks later, on December 22, 2022, MSP WB filed the Motion for Leave to File a Second Amended Complaint, ECF No. 425, and the Amended Motion for Leave. ECF No. 426.

The Court finds that it could deny the Amended Motion for Leave solely because it is untimely, especially as Relators repeatedly indicated over a 10-month period that they intended to file a second amended complaint but consistently failed to do so. Specifically, Relators initially represented a desire to file a second amended complaint on January 27, 2022. That was six weeks after the Defendants' initial motions to dismiss were filed, over 10 months before the December 7, 2022 hearing

on the motions to dismiss, and approximately 11 months before the proposed second amended complaint was filed.

## B. Bad Faith and Prejudice to Defendants

The failure to timely file a motion for leave to file a proposed second amended complaint is inexplicable, and their delay in filing until December 22, 2022 is steeped in bad faith. First, when Relators first proposed filing a second amended complaint in January 2022, Defendants did not flatly refuse to concur in Relators' desired motion to file the second amended complaint. To the contrary, Defendants simply asked Relators' counsel to "[p]lease forward your proposed [Second] Amended Complaint." ECF 434, PageID.7040. Relators again suggested they would file a second amended complaint on February 1, 2022 and asked for a 10-day extension to file their response. *Id.* at PageID.7037.  Yet, instead of providing a proposed second amended complaint to Defendants upon Defendants' acquiescence, Relators filed responses to the motions to dismiss on February 15, 2022.

Because Relators filed the responses, Defendants then had to prepare and file all of the corresponding reply briefs. Relators and some defendants then filed supplemental briefs until the December 7, 2022 hearing. Many of Relators' briefs again mentioned filing a second amended complaint, *see, e.g.,* ECF No. 371,

PageID.3369-3370, yet Relators still did not file a second amended complaint, or leave to do so, prior to the December 7, 2022 hearing.

Relators' delays: (a) reflect a lack of reasonable diligence by Relators; and (b) caused an excessive waste of time and resources for: (i) Defendants, (ii) Defendants' counsel, (iii) Plaintiffs, (iv) the Court, and (v) even Relators and their counsel. The Court finds that those delays, all of which occurred _after_ Relators' representations that leave to file a second amended motion would be sought, and the excessive waste of time and resources attributable to Relators' failure to timely file for leave to file a second amended complaint constitute bad faith and were unduly prejudicial to Defendants.

Specifically, as set forth above, Relators clearly contemplated filing the second amended complaint and expressed an intent to do so in January 2022. Relators could have, and should have, filed their motion for leave to amend the complaint in response to the motions to dismiss at that time, as permitted by Rule 15. By failing to do so, Defendants were forced to continuously support and argue their motions to dismiss. To grant Relators the relief they seek now, Defendants would have to incur the fees and costs associated with briefing the motions to dismiss all over again. The Court concludes that it would be unduly prejudicial to Defendants to require them to, in essence, start over.

The Relators bad faith is further evidenced by the fact that the Amended Motion for Leave was filed only by MSP WB and not Mr. Angelo. Relators do not explain why only MSP WB seeks leave to file a second amended complaint, a particularly perplexing choice when: (a) Mr. Angelo, not MSP WB, filed the original complaint; (b) the proposed second amended complaint names both Mr. Angelo and MSP WB as Relators; (c) the MSP WB did not even exist until 18 months after Mr. Angelo initiated this cause of action.

Finally, the Court notes that Mr. Angelo originally filed this action only against State Farm and has continued pursuing this action against State Farm. As another Judge in the Eastern District long ago barred Mr. Angelo from pursuing claims against State Farm such as those in this action, *see State Farm Mut. Auto. Ins. Co. v. Angelo*, No. 19-10669-RHC-APP (E.D. Mich.), the continued attempt to sue State Farm reflects bad faith on the part of Relators, especially Mr. Angelo.  In a recent published opinion, the Sixth Circuit Court of Appeals affirmed the court's order enforcing the parties' Settlement Agreement with respect to Angelo's FCA claims against State Farm in Case No. 19-10669.  See, *State Farm Mutual Auto Ins. Co. v. Angelo, et al.,* Case Nos. 22-1409/23-1340, ___ F.4th ___, 2024 WL 938272 (6th Cir. Mar. 5, 2024).

The Court finds that all of Relators' actions (or inactions) have unduly prejudiced Defendants. Not only did they have to file replies in support of their motions to dismiss, they had to travel to and attend the December 7, 2023 hearing and then, at least preliminarily, reargue many parts of the motion to dismiss when they filed their brief(s) in opposition to the Amended Motion for Leave. Defendants also have had to, or believed they had to make other filings related to the Amended Motion for Leave, including responding to Relators' filings at ECF Nos. 470 and 484.

## C. Judicial Economy

The Court normally would not comment on judicial economy when deciding a motion for leave to amend a complaint, however, as Relators have cited judicial economy as a factor supporting their Amended Motion for Leave (*see* ECF No. 426, PageID.6416), the Court does so in this case. Relators assert:

> Judicial economy is served by granting leave to amend. Because all Defendants have filed motions to dismiss the First Amended Complaint, Relator should be allowed to file amendments which address any perceived deficiencies which have been or might be raised.

*Id*. The Court disagrees with Relators' assessment of judicial economy.

If Relators wanted to promote judicial economy – and not prejudice Defendants, as discussed above – they could have been accomplished that objective

45

by Relators filing (and/or seeking leave to file) a second amended complaint in response to Defendants' motions to dismiss, as the Federal Rules of Civil Procedure permit. Instead, the Court has been inundated with motions of all natures related to the Amended Complaint, as well as the Amended Motion for Leave. The Court had to review all 10 motions to dismiss, prepare for the hearing, and hold the hearing on those motions to dismiss. The amount of time incurred by the Court to do so was substantial and, at times, unnecessarily strained the resources of the Court.

### D. Futility

The untimeliness of the Amended Motion for Leave, the bad faith of Relators, the prejudice to Defendants, and the infringement on judicial economy are important, but more significant in the Court decision to deny the Amended Motion for Leave is the dearth of meaningful proposed changes or additions in the proposed second amended complaint. Relators' motion and brief did not detail what the proposed allegations and information are, even though the complaint more than doubled in size, to an unwieldy 500 pages. Instead, Relators generically state in the Amended Motion for Leave only that:

> 6. The proposed amendment adds further details regarding Defendants scheme to knowingly underreport claims, including specifics allegations regarding ISO's efforts to protect the Primary Plans from detection. The proposed amendment also adds additional exemplars and original source documentation to defeat the Defendants' public disclosure bar grounds for dismissal. Additionally, the proposed

amendment adds an additional and related FCA claim.

ECF No. 426, PageID.6416. In the supporting brief, Relators address some of the applicable factors for granting leave to amend, but they conspicuously failed to offer any argument regarding the futility factor. The only arguably relevant statements regarding futility were the following two sentences:

> The Second Amended Complaint addresses the perceived issues in the First Amended Complaint by adding an additional False Claims Act cause of action, attaching Relators' original source material, specific allegations regarding ISO's conspiratorial efforts to protect the Primary Plan Defendants, and further detail regarding the allegations. The Second Amended Complaint creates no notice issue or undue prejudice to Defendants, and all the remaining factors support Relator's position.

*Id.* at PageID.6417.

The Court notes that these sentences do not identify what or where these allegations were in the proposed 500-page complaint, nor do they explain how the proposed new allegations and information are sufficient to survive a Rule 12(b)(6) motion to dismiss. Accordingly, the Court finds that Relators have failed to explain why the proposed amendments would not be futile, *i.e.*, subject to dismissal on a Rule 12(b)(6) motion, just as the Amended Complaint is.

Finally, having reviewed the new allegations and exemplars in the proposed second amended complaint,[5] the Court finds that they are: (1) no more than variations of the insufficient allegations in the Amended Complaint; and (2) supported by nothing more than the unsuccessful arguments Relators made in response to Defendants' motions to dismiss.  In addition, the Court finds that Relators' current arguments lack any information or facts that were not known, or could not have been known, to Relators at the time the Amended Complaint was filed. Relators' current arguments are not distinct, nor do they expand upon the arguments they made in response to Defendants' motions to dismiss. Although Relators have added some allegations and included a few more exemplars, the new allegations and exemplars suffer from the same deficiencies as the allegations in the Amended Complaint.

For all the reasons set forth above, the Court concludes that justice does not require giving Relators another bite at the apple, *see MSP Recovery Claims, LLC v. Metro. Gen. Ins. Co.*, 2021 WL 1526334, at *1 (S.D. Fla. Apr. 19, 2021), *appeal pending*, No. 21-11547 (11th Cir.), especially in light of the conclusory, broad

---

[5] The Court notes that Relators did not identify the new allegations or information in the proposed second amended complaint until the Court required them to do, even though the proposed second amended complaint is 500 pages and more than 250 pages more than the Amended Complaint. *See* ECF No. 443.

approach Relators have taken with respect to the proposed second amended complaint (and, previously, the Amended Complaint). The Amended Motion for Leave is denied.

## VI.  CONCLUSION

Accordingly, and for the reasons stated above,

IT IS ORDERED that Defendants' Omnibus Motion to Dismiss Relators' Amended Complaint [ECF No. 338] is GRANTED.

IT IS FURTHER ORDERED that the Motion for Judicial Notice (ECF No. 339) is GRANTED.

IT IS FURTHER ORDERED that Relators' Motion to Strike [ECF No. 396] is DENIED.

IT IS FURTHER ORDERED that MSP WB's Amended Motion for Leave to File Second Amended Complaint [ECF No. 426] is DENIED.

IT IS FURTHER ORDERED that all remaining motions [ECF Nos. 329, 330, 331, 332, 333, 334, 335, 340, 341, 470, 473, 475, 478, 484] are deemed MOOT.

IT IS FURTHER ORDERED that Relators' cause of action is DISMISSED WITH PREJUDICE.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED:  March 26, 2024